## WILLIAMS *v.* ILLINOIS

No. 1089.   Argued April 22, 1970—Decided June 29, 1970

*Stanley A. Bass* argued the cause for appellant.   With him on the brief were *Jack Greenberg, Michael Meltsner,* and *Anthony G. Amsterdam.*

*James R. Thompson,* Assistant Attorney General of Illinois, argued the cause for appellee.   With him on the brief were *William J. Scott,* Attorney General, and *Joel M. Flaum,* Assistant Attorney General.

The National Legal Aid and Defender Assn. filed a brief as *amicus curiae* urging reversal.

*Richard L. Curry, Marvin E. Aspen,* and *Edmund Hatfield,* filed a brief for the City of Chicago as *amicus curiae* urging affirmance.

236

MR. CHIEF JUSTICE BURGER delivered the opinion of the Court.

This appeal from Illinois presents an important question involving a claim of discriminatory treatment based upon financial inability to pay a fine and court costs imposed in a criminal case. The narrow issue raised is whether an indigent may be continued in confinement beyond the maximum term specified by statute because of his failure to satisfy the monetary provisions of the sentence. We noted probable jurisdiction [1] and set the case for oral argument with No. 782, *Morris* v. *Schoonfield, post,* p. 508, also decided today.

On August 16, 1967, appellant was convicted of petty theft and received the maximum sentence provided by state law: one year imprisonment and a $500 fine. [2] Appellant was also taxed $5 in court costs. The judgment directed, as permitted by statute, that if appellant was in default of the payment of the fine and court costs at the expiration of the one year sentence, he should remain in jail pursuant to § 1–7 (k) of the Illinois Criminal Code to "work off" the monetary obligations at the rate of $5 per day. [3] Thus, whereas the maximum term of imprisonment for petty theft was one year, the effect of the sentence imposed here required appellant to be

[1] 396 U. S. 1036.

[2] Ill. Rev. Stat., c. 38, § 16–1 (1967), which proscribes theft of property not from the person and not exceeding $150 in value.

[3] Section 1–7 (k) of the Criminal Code of 1961 provides:

"Working out Fines.

"A judgment of a fine imposed upon an offender may be enforced in the same manner as a judgment entered in a civil action; Provided, however, that in such judgment imposing the fine the court may further order that upon non-payment of such fine, the offender may be imprisoned until the fine is paid„ or satisfied at the rate of $5.00 per day of imprisonment; Provided, further, however, that no person shall be imprisoned under the first proviso hereof for a longer period than 6 months."

confined for 101 days beyond the maximum period of confinement fixed by the statute since he could not pay the fine and costs of $505.

On November 29, 1967, appellant, while still an inmate in the county jail, petitioned the sentencing judge[4] to vacate that portion of the order requiring that he remain imprisoned upon expiration of his one year sentence because of nonpayment of the fine and court costs. Appellant alleged that he was indigent at all stages of the proceedings, was without funds or property to satisfy the money portion of the sentence, and that he would "be able to get a job and earn funds to pay the fine and costs, if . . . released from jail upon expiration of his one year sentence." The State did not dispute the factual allegations[5] and the trial court granted the State's motion to dismiss the petition

> "for the reason that [appellant] was not legally entitled at that time to the relief requested . . . because he still has time to serve on his jail sentence, and when that sentence has been served his financial ability to pay a fine might not be the same as it is of the date [of sentencing]."

---

[4] The post-conviction petition was filed pursuant to § 72 of the Illinois Civil Practice Act.

[5] Parenthetically we note that appellant was unable to post pretrial bail of $2,000 and was therefore required to remain in custody.

On May 23, 1968, appellant completed service of his one year sentence, less time off for time spent in custody prior to trial. He then began serving the period of incarceration required to satisfy the $505 fine and costs. On May 28, 1968, however, the Supreme Court of Illinois, on motion of appellant's counsel, set bail pending appeal at $500; the 10% deposit was posted by the Civil Legal Aid Service. Appellant is free on bond, and since he has not yet served the full period of incarceration to satisfy the fine and costs the case is not moot.

238

Appeal was taken directly to the Supreme Court of Illinois, which appears to have rejected any suggestion by the trial court that the petition was premature and went on to decide appellant's constitutional claim on the merits. It held that "there is no denial of equal protection of the law when an indigent defendant is imprisoned to satisfy payment of the fine." *People* v. *Williams*, 41 Ill. 2d 511, 517, 244 N. E. 2d 197, 200 (1969).[6]

In addition to renewing the constitutional argument rejected by the state courts, appellant advances a host of other claims[7] which, in light of our disposition, we find unnecessary to reach or decide. Appellant challenges the constitutionality of § 1–7 (k) of the Illinois Criminal Code and argues primarily that the Equal Protection Clause of the Fourteenth Amendment prohibits imprisonment of an indigent beyond the maximum term authorized by the statute governing the substantive offense when that imprisonment flows directly from his present inability to pay a fine and court costs. In response the State asserts its interest in the collection of revenues produced by payment of fines and contends that a "work off" system, as provided by § 1–7 (k), is a rational means of implementing that policy. That interest is substantial and legitimate but for present purposes it is not unlike the State's interest in collecting a fine from an indigent person in circumstances where no imprisonment is included in the judgment. The State argues further that the statute is not constitutionally infirm simply because the legislature could have achieved the same result

---

[6] The Supreme Court of Illinois dealt exclusively with that portion of the unpaid sum stemming from the fine. Its opinion contains no discussion of the constitutionality of incarceration arising from failure to pay court costs even though the issue was tendered.

[7] Appellant also argues that every instance of default imprisonment violates either the Equal Protection and/or Due Process Clause(s) of the Fourteenth Amendment. He also asserts that the $5 per diem figure is unreasonable and irrational.

by some other means. With that general proposition we have no quarrel but that generality does not resolve the issue.

As noted earlier, appellant's incarceration beyond the statutory maximum stems from separate albeit related reasons: nonpayment of a fine and nonpayment of court costs. We find that neither of those grounds can constitutionally support the type of imprisonment imposed here, but we treat the fine and costs together because disposition of the claim on fines governs our disposition on costs.[8]

The custom of imprisoning a convicted defendant for nonpayment of fines dates back to medieval England[9] and has long been practiced in this country. At the present time almost all States and the Federal Government have statutes authorizing incarceration under such circumstances. Most States permit imprisonment beyond the maximum term allowed by law, and in some there is no limit on the length of time one may serve for nonpayment.[10] While neither the antiquity of a practice nor the fact of steadfast legislative and judicial adherence to it through the centuries insulates it from constitutional attack, these factors should be weighed in

[8] See n. 20, *infra*.

[9] See generally 2 W. Holdsworth, A History of English Law 43–44 (3d ed. 1927); 1 J. Bishop on Criminal Law § 940, p. 693 (9th ed. 1923); 1 J. Stephen, A History of the Criminal Law of England 57 (1883). See also, Comment, Fines, Imprisonment, and the Poor: "Thirty Dollars or Thirty Days," 57 Calif. L. Rev. 778, 780–787 (1969).

[10] The National Legal Aid and Defender Association, as *Amicus Curiae*, has filed a brief containing an extensive appendix which includes state statutes with helpful annotations. We have reproduced this portion of its brief as an appendix to this opinion. The corresponding federal statutes are 18 U. S. C. §§ 3565, 3569. See also Note, The Equal Protection Clause and Imprisonment of the Indigent for Nonpayment of Fines, 64 Mich. L. Rev. 938 (1966).

the balance.[11]  Indeed, in prior cases this Court seems to have tacitly approved incarceration to "work off" unpaid fines.  See *Hill* v. *Wampler,* 298 U. S. 460 (1936); *Ex parte Jackson,* 96 U. S. 727 (1878).[12]

The need to be open to reassessment of ancient practices other than those explicitly mandated by the Constitution is illustrated by the present case since the greatly increased use of fines as a criminal sanction has made nonpayment a major cause of incarceration in this country.[13]  Default imprisonment has traditionally been justified on the ground that it is a coercive device to ensure obedience to the judgment of the court.[14]  Thus, commitment for failure to pay has not been viewed as a part of the punishment or as an increase in the penalty; rather, it has been viewed as a means of enabling the court to enforce collection of money that a convicted defendant was obligated by the sentence to pay.  The additional imprisonment, it has been said, may always be avoided by payment of the fine.[15]

We conclude that when the aggregate imprisonment exceeds the maximum period fixed by the statute and

---

[11] See *Walz* v. *Tax Comm'n,* decided May 4, 1970, 397 U. S. 664, 678, where we noted that, "Nearly 50 years ago Mr. Justice Holmes stated:

" 'If a thing has been practised for two hundred years by common consent, it will need a strong case for the Fourteenth Amendment to affect it. . . .' *Jackman* v. *Rosenbaum Co.,* 260 U. S. 22, 31 (1922)."

[12] We note, however, that neither in those cases, nor at any other time, were the constitutional issues flowing from lack of funds presented to this Court for resolution.

[13] See, *e. g.,* American Bar Foundation, L. Silverstein, Defense of the Poor in Criminal Cases in American State Courts 123 (1965); S. Rubin, The Law of Criminal Correction 253 (1963).

[14] See, *e. g.,* Chief Judge Desmond's excellent treatment of the historical development in *People* v. *Saffore,* 18 N. Y. 2d 101, 218 N. E. 2d 686 (1966).

[15] See, *e. g., Peeples* v. *District of Columbia,* 75 A. 2d 845, 847 (D. C. Mun. Ct. App. 1950).

results directly from an involuntary nonpayment of a fine or court costs we are confronted with an impermissible discrimination that rests on ability to pay, and accordingly, we vacate the judgment below.

*Griffin* v. *Illinois,* 351 U. S. 12 (1956), marked a significant effort to alleviate discrimination against those who are unable to meet the costs of litigation in the administration of criminal justice. In holding that the failure to provide an indigent criminal defendant with a trial transcript at public expense in order to prosecute an appeal was a violation of the Equal Protection Clause, this Court declared that "[t]here can be no equal justice where the kind of trial a man gets depends on the amount of money he has." *Id.,* at 19. In the years since the *Griffin* case the Court has had frequent occasion to reaffirm allegiance to the basic command that justice be applied equally to all persons.[16] Subsequent decisions of this Court have pointedly demonstrated that the passage of time has heightened rather than weakened the attempts to mitigate the disparate treatment of indigents in the criminal process.[17] Applying the teaching of the *Griffin* case here, we conclude that an indigent criminal defendant may not be imprisoned in default of payment of a fine beyond the maximum authorized by the statute regulating the substantive offense.

A State has wide latitude in fixing the punishment for state crimes. Thus, appellant does not assert that Illinois could not have appropriately fixed the penalty, in the first instance, at one year and 101 days. Nor has the claim been advanced that the sentence imposed was excessive in light of the circumstances of the commission of this particular offense. However, once the State has

---

[16] See Note, Discriminations Against the Poor and the Fourteenth Amendment, 81 Harv. L. Rev. 435 (1967).

[17] See, *e. g., Rinaldi* v. *Yeager,* 384 U. S. 305 (1966); *Douglas* v. *California,* 372 U. S. 353 (1963); *Smith* v. *Bennett,* 365 U. S. 708 (1961).

defined the outer limits of incarceration necessary to satisfy its penological interests and policies, it may not then subject a certain class of convicted defendants to a period of imprisonment beyond the statutory maximum solely by reason of their indigency.

It is clear, of course, that the sentence was not imposed upon appellant because of his indigency but because he had committed a crime. And the Illinois statutory scheme does not distinguish between defendants on the basis of ability to pay fines. But, as we said in *Griffin* v. *Illinois, supra,* "a law nondiscriminatory on its face may be grossly discriminatory in its operation." *Id.,* at 17 n. 11. Here the Illinois statute as applied to Williams works an invidious discrimination solely because he is unable to pay the fine. On its face the statute extends to all defendants an apparently equal opportunity for limiting confinement to the statutory maximum simply by satisfying a money judgment. In fact, this is an illusory choice for Williams or any indigent who, by definition, is without funds.[18] Since only a convicted person with access to funds can avoid the increased imprisonment, the Illinois statute in operative effect exposes only indigents to the risk of imprisonment beyond the statutory maximum. By making the maximum confinement contingent upon one's ability to pay, the State has visited different consequences on two categories of persons since the result is to make incarceration in excess of the statutory maximum applicable only to those without the requisite resources to satisfy the money portion of the judgment.[19]

---

[18] See, *e. g.,* Goldberg, Equality and Governmental Action, 39 N. Y. U. L. Rev. 205, 221 (1964).

[19] We wish to make clear that nothing in our decision today precludes imprisonment for willful refusal to pay a fine or court costs. See *Ex parte Smith,* 97 Utah 280, 92 P. 2d 1098 (1939). Cf. *Illinois* v. *Allen,* 397 U. S. 337 (1970).

The mere fact that an indigent in a particular case may be imprisoned for a longer time than a non-indigent convicted of the same offense does not, of course, give rise to a violation of the Equal Protection Clause. Sentencing judges are vested with wide discretion in the exceedingly difficult task of determining the appropriate punishment in the countless variety of situations that appear. The Constitution permits qualitative differences in meting out punishment and there is no requirement that two persons convicted of the same offense receive identical sentences. Thus it was that in *Williams* v. *New York,* 337 U. S. 241, 247 (1949), we said: "The belief no longer prevails that every offense in a like legal category calls for an identical punishment without regard to the past life and habits of a particular offender."

Nothing in today's decision curtails the sentencing prerogative of a judge because, as noted previously, the sovereign's purpose in confining an indigent beyond the statutory maximum is to provide a coercive means of collecting or "working out" a fine. After having taken into consideration the wide range of factors underlying the exercise of his sentencing function, nothing we now hold precludes a judge from imposing on an indigent, as on any defendant, the maximum penalty prescribed by law.

It bears emphasis that our holding does not deal with a judgment of confinement for nonpayment of a fine in the familiar pattern of alternative sentence of "$30 or 30 days." We hold only that a State may not constitutionally imprison beyond the maximum duration fixed by statute a defendant who is financially unable to pay a fine. A statute permitting a sentence of both imprisonment and fine cannot be parlayed into a longer term of imprisonment than is fixed by the statute since to do so would be to accomplish indirectly as to an indigent that which cannot be done directly. We have no

occasion to reach the question whether a State is pre-
cluded in any other circumstances from holding an in-
digent accountable for a fine by use of a penal sanction.
We hold only that the Equal Protection Clause of the
Fourteenth Amendment requires that the statutory ceil-
ing placed on imprisonment for any substantive offense
be the same for all defendants irrespective of their
economic status.[20]

The State is not powerless to enforce judgments against
those financially unable to pay a fine; indeed, a different
result would amount to inverse discrimination since it
would enable an indigent to avoid both the fine and
imprisonment for nonpayment whereas other defendants
must always suffer one or the other conviction.

It is unnecessary for us to canvass the numerous alter-
natives to which the State by legislative enactment—or
judges within the scope of their authority—may resort in
order to avoid imprisoning an indigent beyond the statu-
tory maximum for involuntary nonpayment of a fine or
court costs. Appellant has suggested several plans, some
of which are already utilized in some States, while others
resemble those proposed by various studies.[21] The State

---

[20] What we have said regarding imprisonment for involuntary
nonpayment of fines applies with equal force to imprisonment for
involuntary nonpayment of court costs. Although the actual
amounts prescribed for fines and court costs reflect quite different
considerations, see generally Note, Litigation Costs: The Hidden
Barrier to the Indigent, 56 Geo. L. J. 516 (1968), the purpose of
incarceration appears to be the same in both instances: ensuring
compliance with a judgment. Thus inability to pay court costs can-
not justify imprisoning an indigent beyond the maximum statutory
term since the Equal Protection Clause prohibits expanding the
maximum term specified by the statute simply because of inability
to pay.

[21] Appellant has suggested that the fine and costs could be col-
lected through an installment plan as is currently used in several
States. E. g., Cal. Penal Code § 1205; Mich. Comp. Laws § 769.3

is free to choose from among the variety of solutions already proposed and, of course, it may devise new ones.[22]

We are not unaware that today's holding may place a further burden on States in administering criminal justice. Perhaps a fairer and more accurate statement would be that new cases expose old infirmities which apathy or absence of challenge has permitted to stand. But the constitutional imperatives of the Equal Protection Clause must have priority over the comfortable convenience of the status quo. "Any supposed administrative inconvenience would be minimal, since . . . [the unpaid portion of the judgment] could be reached through the ordinary processes of garnishment in the event of default." *Rinaldi* v. *Yeager,* 384 U. S. 305, 310 (1966).

Nothing we hold today limits the power of the sentencing judge to impose alternative sanctions permitted by Illinois law; the definition of such alternatives, if any, lies with the Illinois courts. We therefore vacate the judgment appealed from and remand to the Supreme Court of Illinois for further proceedings not inconsistent with this opinion.

*It is so ordered.*

MR. JUSTICE BLACKMUN took no part in the consideration or decision of this case.

---

(1948); Pa. Stat. Ann., Tit. 19, §§ 953–956 (1964). See also American Bar Association Project, Standards for Criminal Justice, Sentencing Alternatives and Procedures § 2.7 (b), pp. 117–123 (Approved Draft 1968).

Appellant also suggests that the trial judge could impose a parole requirement on an indigent that he do specified work during the day to satisfy the fine. Cf. 50 U. S. C. App. § 456.

See also Model Penal Code § 7.02 (3) (a) (Proposed Official Draft 1962).

[22] Cf. *United States* v. *Wade,* 388 U. S. 218, 239 (1967).

246

State Statutory Provisions Concerning
Incarceration For Failure To Pay Fine

## Alabama

If the fine is not paid defendant is imprisoned in the county jail, possibly at hard labor. The statute is so worded that defendants who have been fined differing amounts may be imprisoned for the same amount of time in satisfaction of the fine. There is no provision in the statute for payment by installment. Ala. Code Tit. 15, Sec. 341 (1958).

## Alaska

The judgment that defendant pay a fine shall also direct imprisonment until the fine is satisfied. Rate of credit: $5 per day (additional $5 if prisoner works.) Alas. Stat. Sec. 12.55.010 (1962).

When an indigent defendant has been confined in prison 30 days solely for the nonpayment of the fine, the defendant may petition the magistrate for discharge if certain conditions are met. *Id.* 12.55.030.

## Arizona

The sentence of fine may also direct that defendant be imprisoned until the fine is satisfied, but the imprisonment shall not extend beyond the term for which defendant might be sentenced to imprisonment for the offense of which he has been convicted. Rate of credit: $1 per day. Ariz. Rev. Ann. Sec. 13–1648 (1956).

## Arkansas

If the punishment of an offense is a fine, the judgment shall direct that defendant be imprisoned until fine and costs are paid. Rate of credit: $1 per day. Ark. Stat. Ann. Sec. 43–2315 (1964).

Specifically applying to convictions of misdemeanor and also providing for imprisonment at the rate of $1 per day. *Id.* Sec. 46–510.

Providing that confinement shall not discharge the fine which can only be collected by proceeding against the defendant's property. *Id.* Sec. 43–2606.

## California

Judgment that defendant pay a fine may also direct that he be imprisoned until the fine is satisfied. Rate of credit: not less than $2 per day. When defendant is convicted of a misdemeanor, the judgment may provide for payment of the fine in installments with imprisonment in the event of default. Cal. Pen. Code Sec. 1205 (1968).

But imprisonment for nonpayment of a fine may not exceed in any case the term for which the defendant might be sentenced for the offense of which he has been convicted. *Id.*

## Colorado

Court shall have power as part of its judgment to order that the offender be committed to jail until the fine is paid or otherwise legally discharged. Colo. Rev. Stat. Ann. Sec. 39–10–10 (1964).

Persons confined in jail for fines who have no estate with which to pay such fines may be discharged from imprisonment. *Id.* Sec. 39–10–9.

## Connecticut

If a convict fails to pay a fine lawfully imposed, he shall be committed to jail until the fine is paid. Conn. Gen. Stat. Ann. Sec. 18–63 (1968).

Rate of credit: $3 per day.  *Id.* Sec. 18–50.

When a person is convicted of a crime punishable by a fine or imprisonment, the court may impose upon the offender a conditional sentence and order him to pay a fine within a limited time and in default of so doing, to be imprisoned.  *Id.* Sec. 54–119.

### Delaware

When a person is sentenced to pay a fine, the courts named in this section may order imprisonment up to one year, if no term for such nonpayment is otherwise fixed by law.  Del. Code Ann. Tit. 11, Sec. 4103 (a), (Supp. 1968).

In the same situation, justices of the peace and other named courts may order the person defaulting imprisoned for no longer than 90 days.  *Id.* Tit. 11, Sec. 4103 (b).

### Florida

When a court sentences a person to pay a fine, the court shall also provide in the sentence a period of time of imprisonment in case of default.  Fla. Stat. Ann. Sec. 921.14 (Supp. 1969).

In cases of convictions for misdemeanor, the court may order the defendant to serve not exceeding sixty days in default of payment of a fine.  *Id.* Sec. 775.07.

Rate of credit:  *Id.* Sec. 951.16.

### Georgia

Fines imposed by the court shall be paid immediately or within such reasonable time as the court may grant. Ga. Code Ann. Sec. 27–2901 (1969 Supp.).

Judge may provide as a means of enforcing payment of a fine that the defendant be imprisoned until the fine is paid.  *R. E. Lee* v. *State,* 118 S. E. 2d 599 (1961).

### Hawaii

When a judgment to pay a fine is not satisfied by immediate payment, the offender shall be committed to

prison until the judgment is satisfied. Hawaii Rev. Stat. Sec. 712–4 (1968).

A poor person, after having been confined for thirty days, solely for the nonpayment of a fine, may make application to the circuit court for the circuit in which he is imprisoned for release. The person may then be discharged upon the taking of an oath. *Id.*

### Idaho

A judgment that defendant pay a fine may also direct that the defendant be imprisoned until the fine has been satisfied. Rate of credit: $5 per day. Idaho Code Ann. Sec. 19–2517 (1969 Supp.).

Substantially the same is provided, for both felonies and misdemeanors, by *Id.* Sec. 18–303.

### Illinois

In a judgment imposing a fine, the court may order that upon nonpayment of the fine the offender may be imprisoned. Rate of credit: $5 per day. But no person may be imprisoned in this fashion for longer than six months. Ill. Rev. Stat. (1969) ch. 38, Sec. 1–7 (k).

If a person confined in jail for failure to pay a fine has no estate with which to pay the fine, the court may release that person. *Id.* ch. 38, Sec. 180–6.

### Indiana

Whenever a person is fined for a felony or a misdemeanor, the judgment shall be that he is committed until the fine is paid. Ind. Ann. Stat. Sec. 9–2228 (1956).

Rate of credit: $5 per day. *Id.* Sec. 9–2227a (Supp. 1969).

### Iowa

The judgment that defendant pay a fine may also direct that he be imprisoned until the fine is satisfied. Iowa Code Ann. Sec. 762.32 (1950).

Rate of credit: $3⅓ per day. *Id.* Sec. 789.17.

## Kansas

Defendant to be ordered committed to county jail until fine is paid. Kan. Gen. Stat. Ann. Sec. 62–1513 (1964).

Rate of credit: $2 per day. *Id.* Sec. 62–2109.

A person imprisoned for failure to pay a fine may be discharged from imprisonment if found to be unable to pay. *Id.* Sec. 62–1515.

## Kentucky

Judgment shall be rendered directing that the defendant shall work at hard labor until the fine and costs are satisfied. Ky. Rev. Stat. Sec. 431.140 (1969).

Rate of credit: $2 per day. *Id.*

## Louisiana

If a fine is imposed, the sentence shall provide that in default the defendant shall be imprisoned for a specified period not to exceed one year. But: where the maximum prison sentence which may be imposed as a penalty for a misdemeanor is six months or less, the total period of imprisonment upon conviction of the offense, including imprisonment for default, shall not exceed six months for that offense. La. Crim. Pro. Code Ann. Art. 884 (1970 Pocket part).

## Maine

Convict sentenced to pay fine may be committed or confined for default thereof, but not longer than 11 months for any single fine. Me. Rev. Stat. Ann. Tit. 15, Sec. 1904 (Supp. 1970).

Rate of credit: $5 per day. *Id.*

## Maryland

In default of payment of a fine, a person adjudged guilty shall be committed to jail until discharged by due course of law. Md. Ann. Code Art. 38, Sec. 1 (1965).

[This provision has been amended by Chapter 147 of the 1970 Laws of Maryland (approved April 15, 1970). See *Morris* v. *Schoonfield, post,* p. 508.]

Installment payments in some counties are provided for. *Id.* Art. 52, Sec. 18 (1969 Supp.).

Rate of credit: $2 per day (with some modifications resulting in shorter periods of confinement in some cases than would result at $2 per day). *Id.* Art. 38, Sec. 4 (1969 Supp.).

## Massachusetts

When a person convicted is sentenced to pay a fine, he may also be sentenced to be committed until it is paid. Mass. Ann. Laws, ch. 279, Sec. 1; ch. 127, Sec. 144 (1969).

Rate of credit: $1 per day. *Id.* ch. 127, Sec. 144.

The execution of the sentence of confinement may be suspended and the defendant placed on probation on condition that he pay the fine within a certain time, either in one payment or in installments. In case of default, the court may revoke the suspension of the execution of the sentence. *Id.* ch. 279, Sec. 1.

Discharge of poor prisoners incarcerated for failure to pay fines. *Id.* ch. 127, Sec. 145, (when fine is less than ten dollars); Sec. 146, (when the prisoner has been confined for three months).

## Michigan

The court may impose upon the offender a conditional sentence and order him to pay a fine within a limited time and in default of so doing to be imprisoned. The court may also place the offender on probation with a condition that he pay a fine in installments and in default of such payments be imprisoned. Mich. Comp. Laws Ann. Sec. 769.3 (1968).

Execution may issue for the collection of fines in cases where no alternative sentence or judgment of imprison-

ment has been rendered, but no one may be imprisoned under such execution for longer than 90 days. *Id.* Sec. 600.4815.

## Minnesota

If a defendant's fine exceeds the amount of his bail, the defendant shall be committed until the balance is paid. Minn. Stat. Ann. Sec. 629.53 (1947).

Rate of credit: $3 per day. *Id.* Sec. 641.10 (Supp. 1969).

## Mississippi

Convicts to be imprisoned until fine is fully paid. However, no convict may be held for more than two years for failure to pay the fine for any one offense. Miss. Code Ann. Sec. 7899 (1957).

Rate of credit: $3 per day. *Id.* Sec. 7906.

## Missouri

When a defendant is sentenced to pay a fine, he shall be imprisoned until the sentence is fully complied with. Mo. Ann. Stat. Sec. 546.830 (1953).

The judge, on petition of the prisoner, may sentence him to imprisonment for a limited time in lieu of the fine. *Id.* Sec. 546.840.

Rate of credit: $2 per day. *Id.* Sec. 551.010.

Magistrates' courts have similar powers but the rate of credit may vary from $2 to $10 for each day of confinement. *Id.* Secs. 543.260 and 543.270.

## Montana

The judgment may be for fine and imprisonment until the fine is paid. Mont. Rev. Codes Ann. Sec. 95–2302 (b) (1969).

Rate of credit: $10 per day. *Id.*

## Nebraska

In cases where courts or magistrates have power to sentence an offender to pay a fine, those courts or mag-

istrates may make it a part of the sentence that the party be committed until the fine is paid. Neb. Rev. Stat. Sec. 29–2206 (1965).

Rate of credit: $6 per day. *Id.* Sec. 29–2412.

In cases of misdemeanor, offenders may be committed to the county jail until the fine is paid. *Id.* Sec. 29–2404.

## Nevada

A person sentenced to pay a fine may be confined until the fine is satisfied. Nev. Rev. Stat. Sec. 176.065 (1967).

Rate of credit: $4 per day. *Id.*

## New Hampshire

A person sentenced to pay a fine shall be ordered to be imprisoned until sentence is performed. N. H. Rev. Stat. Ann. Sec. 618.6 (1969 Supp.).

Rate of credit: $5 per day. *Id.* Sec. 618.9.

## New Jersey

Defendant may be placed at labor in a county jail or penitentiary until the fine is paid. N. J. Stat. Ann. Sec. 2A:166–14 (1953).

Defendant may also be permitted to remain at large for a fixed time to enable him to pay the fine. If defendant fails to pay, the court may then order him into custody. *Id.* Sec. 2A:166–15.

Rate of credit: $5 per day. *Id.* Sec. 2A:166–16 (Supp. 1969).

A disorderly person who defaults in the payment of a fine may be committed by the court. *Id.* Sec. 2A:169–5 (Supp. 1969).

## New Mexico

A person may be committed to prison for nonpayment of a fine. N. M. Stat. Ann. Sec. 42–2–9 (Supp. 1969). (Applies to both county jails and the state penitentiary— Compiler's Note).

Rate of credit: $5 per day. *Id.*

If a person so confined makes an affidavit that he has no property out of which to pay the fine, he must be released after three months of confinement. *Id.* sub. B.

But convicts sentenced to the state penitentiary may not be required to serve more than thirty days for a fine. *Id.* Sec. 42–1–60 (1964).

## New York

In the event the defendant fails to pay a fine as directed, the court may direct that he be imprisoned until the fine is satisfied (limitations: for a felony, the imprisonment may not exceed one year; for a misdemeanor, it may not exceed one third of the maximum authorized sentence.) N. Y. Code Crim. Proc. Sec. 470–d (Supp. 1969).

Sec. 470–d has been limited by *People* v. *Saffore,* 18 N. Y. 2d 101, 218 N. E. 2d 686 (1966).

## North Carolina

If a guilty party is sentenced to pay a fine and it is not immediately paid, the guilty person may be committed to the county jail until the fine is paid. N. C. Gen. Stat. Sec. 6–65 (Supp. 1970).

Persons committed for fines may be discharged from imprisonment upon taking an insolvent debtor's oath. *Id.* Secs. 23–23 and 23–24 (1965).

## North Dakota

A judgment that the defendant pay a fine also may direct that he be imprisoned until the fine is satisfied. N. D. Cent. Code Sec. 29–26–21 (1960).

Rate of credit: $2 per day (but such imprisonment does not discharge the judgment for the fine.) *Id.*

## Ohio

When a fine is the whole or part of a sentence, the court or magistrate may order that the person sentenced remain in jail until the fine is paid but no commitment may exceed six months. Ohio Rev. Code Ann. Sec. 2947.14 (1954).

Rate of credit: $3 per day. *Id.*

In a case of conviction for a misdemeanor, the judge or magistrate has the same power as above, but there is no limit of six months. *Id.* Sec. 2947.20.

## Oklahoma

Persons sentenced to pay a fine who refuse or fail to pay it, may be imprisoned. Okla. Stat. Tit. 11, Sec. 794 (Supp. 1969).

Rate of credit: $2 per day. *Id.*

A poor convict who has been imprisoned for nonpayment of a fine may be discharged after serving six months if two justices of the peace are satisfied that the convict has not had since his conviction any estate with which he might have paid the fine. *Id.* Tit. 57, Sec. 15 (1969).

## Oregon

A judgment that the defendant pay a fine shall also direct that he be imprisoned in the county jail until the fine is satisfied. Ore. Rev. Stat. Sec. 137.150 (1963).

Rate of credit: $5 per day. *Id.*

Indigents imprisoned for nonpayment of fine may be discharged after serving thirty days solely for such nonpayment if in the opinion of a magistrate or court it appears that the prisoner is unable to pay the fine. Ore. Rev. Stat. Sec. 169.160 (1967).

## Pennsylvania

Persons may be imprisoned in an action for fines or penalties. Pa. Stat. Ann. Tit. 12, Sec. 257 (1953). A person confined for nonpayment of a fine may be discharged if he conforms to the provisions for insolvent debtors, but no application is allowed until the prisoner has served at least three months. *Id.* Tit. 39, Sec. 323 (1954).

The sentencing authority may allow payment of a fine by installments, but upon default the defendant may be committed. *Id.* Tit. 19, Secs. 953 and 956 (1964).

## Rhode Island

Persons may be committed to the adult correctional institutions for the nonpayment of fines. R. I. Gen. Laws Ann. Sec. 13–2–36 (1957).

Rate of credit: $5 per day. *Id.*

The director of social welfare may recommend the release of persons so confined, but no guidelines are set out in the statute. *Id.*

## South Carolina

Offenders may be committed to jail, if they are unable to pay forfeitures, until the amount is satisfied. S. C. Code Ann. Sec. 17–574 (1962).

Offenders so committed are entitled to the privilege of insolvent debtors. *Id.*

Installment payments as a condition of probation. *Id.* Sec. 55–593.

## South Dakota

A judgment that the offender pay a fine may also direct that he be imprisoned until the fine is satisfied. S. D. Comp. Laws Ann. Sec. 23–48–23 (1969).

Rate of credit: $2 per day. *Id.*

## Tennessee

If a fine is not paid, the defendant shall be imprisoned until it is paid. Tenn. Code Ann. Sec. 40–3203 (1955).

Rate of credit: $5 per day. *Id.* Sec. 41–1223 (1956).

## Texas

When a defendant convicted of a misdemeanor is unable to pay the fine adjudged against him, he may be put to work or imprisoned for a sufficient length of time to discharge the amount. Tex. Code Crim. Proc. Art. 43.09 (1966).

## Utah

A judgment that a defendant pay a fine may also direct that he be imprisoned until the fine is satisfied. Utah Code Ann. Sec. 77–35–15 (1953).

Rate of credit: $2 per day. *Id.*

## Vermont

When a person is sentenced to imprisonment and also to pay a fine, the court may order him imprisoned for failure to pay the fine, the term of imprisonment to begin at the end of the term in the original sentence. Vt. Stat. Ann. Tit. 13, Sec. 7222 (Supp. 1969).

When a person is sentenced only to pay a fine, the court shall order that if the sentence is not complied with within twenty-four hours the person may be imprisoned. *Id.* Sec. 7223.

Rate of credit: $1 per day. *Id.* Secs. 7222 and 7223.

## Virginia

The circuit or corporation court in which any judgment for a fine is rendered may commit the defendant to jail until the fine is paid. Va. Code Ann. Sec. 19.1–339 (Supp. 1968).

In any misdemeanor case tried before a court not of record in which a fine is imposed on a defendant, if no security is given, the defendant may be committed to jail until the fine is paid. *Id.* Sec. 19.1–338.

## Washington

If a person does not pay the fine adjudged against him within five days, that person may be imprisoned in the county jail until the fine is paid. Wash. Rev. Code Ann. Sec. 10.82.030 (Supp. 1969).

Installment payments permitted. *Id.* (1961).

## West Virginia

When a judgment for a fine is rendered by a court of record having jurisdiction in criminal cases, the court may also provide, as a part of the judgment, that the defendant be imprisoned until the fine is paid. W. Va. Code Ann. Sec. 62–4–9 (1966).

Rate of credit: $1.50 per day. *Id.* Sec. 62–4–10.

Confinement for failure to pay a fine shall not exceed the term of six months. *Id.*

## Wisconsin

When a fine is imposed, the court shall also sentence the defendant to be committed to the county jail until the fine and costs are paid or discharged. Wis. Stat. Ann. Sec. 959.055 (Supp. 1969).

The court may grant a reasonable time not exceeding one stay of 30 days based on the defendant's circumstances in which to make payment before committing him to the county jail. *Id.*

The time of imprisonment, in addition to any other imprisonment, shall not exceed six months. *Id.*

Installment payments permitted. *Id.* Sec. 57.04.

Wyoming

Any court shall have power, in cases of conviction where a fine is inflicted, to order as part of its judgment that the offender shall be committed to jail until the fine is paid or otherwise legally discharged. Wyo. Stat. Ann. Sec. 7–280 (1959).

Rate of credit: $1 per day. *Id*. Sec. 6–8.

MR. JUSTICE HARLAN, concurring in the result.

I concur in today's judgment, but in doing so wish to dissociate myself from the "equal protection" rationale employed by the Court to justify its conclusions.

The "equal protection" analysis of the Court is, I submit, a "wolf in sheep's clothing," for that rationale is no more than a masquerade of a supposedly objective standard for *subjective* judicial judgment as to what state legislation offends notions of "fundamental fairness." Under the rubric of "equal protection" this Court has in recent times effectively substituted its own "enlightened" social philosophy for that of the legislature no less than did in the older days the judicial adherents of the now discredited doctrine of "substantive" due process. I, for one, would prefer to judge the legislation before us in this case in. terms of due process, that is to determine whether it arbitrarily infringes a constitutionally protected interest of this appellant. Due process, as I noted in my dissenting opinion in *Poe* v. *Ullman*, 367 U. S. 497, 541 (1961), is more than merely a procedural safeguard; it is also a " 'bulwark . . . against arbitrary legislation.' *Hurtado* v. *California*, 110 U. S. 516, at 532." See *Flemming* v. *Nestor*, 363 U. S. 603 (1960), and my dissenting opinion in *Shapiro* v. *Thompson*, 394 U. S. 618, 655 (1969).

The matrix of recent "equal protection" analysis is that the "rule that statutory classifications which either are based upon certain 'suspect' criteria or affect 'fundamental rights' will be held to deny equal protection unless justified by a 'compelling' governmental interest," *Shapiro* v. *Thompson, supra,* at 658 (HARLAN, J., dissenting). In *Shapiro, Harper* v. *Virginia Board of Elections,* 383 U. S. 663, 680 (1966), and *Williams* v. *Rhodes,* 393 U. S. 23, 41 (1968), I attempted to expose the weakness in the precedential and jurisprudential foundation upon which the current doctrine of "equal protection" sits. See also *Griffin* v. *Illinois,* 351 U. S. 12, 34–36 (1956) (dissenting opinion); *Douglas* v. *California,* 372 U. S. 353, 360 (1963) (dissenting opinion). I need not retrace the views expressed in these cases, except to object once again to this rhetorical preoccupation with "equalizing" rather than analyzing the *rationality* of the legislative distinction in relation to legislative purpose.

An analysis under due process standards, correctly understood, is, in my view, more conducive to judicial restraint than an approach couched in slogans and ringing phrases, such as "suspect" classification or "invidious" distinctions, or "compelling" state interest, that blur analysis by shifting the focus away from the nature of the individual interest affected, the extent to which it is affected, the rationality of the connection between legislative means and purpose, the existence of alternative means for effectuating the purpose, and the degree of confidence we may have that the statute reflects the legislative concern for the purpose that would legitimately support the means chosen. Accordingly, I turn to the case at hand.

I

The State of Illinois has made the unquestionably legitimate determination that the crime of petty larceny

should be punished by a jail term of days, up to one year, in combination with a fine of a dollar amount. Anyone who, in the judgment of the trial judge, should receive the stiffest penalty known to Illinois law for this crime may, if he possesses funds, satisfy the demands of the criminal law by paying the fine superimposed on the jail term. If he cannot pay his debt to society, it is surely not unequal, but, to the contrary, most equal, that some substitute sanction be imposed lest the individual of means be subjected to a harsher penalty than one who is impoverished. If equal protection implications of the Court's opinion were to be fully realized, it would require that the consequence of punishment be comparable for all individuals; the State would be forced to embark on the impossible task of developing a system of individualized fines, so that the total disutility of the entire fine, or the marginal disutility of the last dollar taken, would be the same for all individuals. Cf. Michelman, Foreword: On Protecting the Poor Through the Fourteenth Amendment, 83 Harv. L. Rev. 7 (1969). Today's holding, and those in the other so-called "equal protection" decisions, *e. g., Douglas* v. *California, supra; Anders* v. *California,* 386 U. S. 738 (1967), offer no pretense to actually providing such equal treatment. It cannot be argued that the requirement of counsel on appeal is the right to the most skilled advocate who is theoretically at the call of the defendant of means. However desirable and enlightened a theory of social and economic equality may be, it is not a theory that has the blessing of the Fourteenth Amendment. Not "every major social ill in this country can find its cure in some constitutional 'principle,' and . . . this Court [is not equipped to] 'take the lead' in promoting reform when other branches of government fail to act. The Constitution is not a panacea for every blot upon the public welfare, nor should this Court, ordained as a

judicial body, be thought of as a general haven for reform movements." *Reynolds* v. *Sims,* 377 U. S. 533, 624–625 (1964) (dissenting opinion).

## II

The reluctance of the Court to carry its "equal protection" approach to its most logical consequences accents what I deem to be the true considerations involved in this case, namely, whether the legislature has impermissibly affected an individual right or has done so in an arbitrary fashion. Cf. Michelman, *supra.* While legislation usually will not be deemed arbitrary if its means can arguably be supposed to be related to a legitimate purpose (see my dissenting opinion in *Shapiro* v. *Thompson, supra*) and generally the burden of demonstrating the existence of a rational connection between means and ends is not borne by the State) see *Flemming* v. *Nestor, supra,* and my dissenting opinion in *Swann* v. *Adams,* 385 U. S. 440, 447 (1967)), the presumption of regularity that comes with legislative judgment is one that is not equally acceptable in all instances, nor is it blind to the nature of the interests affected.

Thus, as a due process matter I have subscribed to the admonition of *Skinner* v. *Oklahoma,* 316 U. S. 535, 541 (1942), where the Court cautioned that there are limits to the extent to which the presumption of constitutionality can be pressed where a "basic liberty" is concerned. See my dissenting opinion in *Poe* v. *Ullman, supra,* at 543. The same viewpoint was implicit in *Flemming* v. *Nestor, supra,* where the Court noted the breadth of latitude to be accorded to a legislative judgment when the interest was that of a "noncontractual benefit under a social welfare program." 363 U. S., at 611. Thus while that "interest . . . is of sufficient substance to fall within the protection from arbitrary governmental action

afforded by the Due Process Clause," when that interest is the "withholding of a noncontractual benefit under a social welfare program . . . , we must recognize that the Due Process Clause can be thought to interpose a bar only if the statute manifests a patently arbitrary classification, utterly lacking in rational justification." *Ibid.*

The implication of *Flemming* is, however, that the deference owed to legislative judgment is not the same in all cases. Thus legislation that regulates conduct but incidentally affects freedom of expression may, although it is a rational choice to effectuate a legitimate legislative purpose, be invalid because it imposes a burden on that right, or because other means, entailing less imposition, may exist. See *NAACP* v. *Alabama,* 357 U. S. 449 (1958); *Lovell* v. *City of Griffin,* 303 U. S. 444 (1938); *Garner* v. *Louisiana,* 368 U. S. 157, 185 (1961) (concurring in the judgment); *United States* v. *O'Brien,* 391 U. S. 367, 388 (1968) (concurring opinion).

These decisions, by no means dispositive of the case before us, unquestionably show that this Court will squint hard at any legislation that deprives an individual of his liberty—his right to remain free. Cf. my dissenting opinion in *Poe* v. *Ullman, supra.* While the interest of the State, that of punishing one convicted of crime is no less substantial, cf. concurring opinion of MR. JUSTICE BRENNAN in *Illinois* v. *Allen,* 397 U. S. 337, 347 (1970), the "balance which our Nation, built upon postulates of respect for the liberty of the individual, has struck between that liberty and the demands of organized society," *Poe* v. *Ullman, supra,* at 542, "having regard to what history teaches" is not such that the State's interest here outweighs that of the individual so as to bring into full play the application of the usual salutary presumption of rationality.

## III

The State by this statute, or any other statute fixing a penalty of a fine, has declared its penological interest—deterrence, retribution, and rehabilitation—satisfied by a monetary payment, and disclaimed, as serving any penological purpose in such cases, a term in jail. While there can be no question that the State has a legitimate concern with punishing an individual who cannot pay the fine, there is serious question in my mind whether, having declared itself indifferent as between fine and jail, it can consistently with due process refrain from offering some alternative such as payment on the installment plan.

There are two conceivable justifications for not doing so. The most obvious and likely justification for the present statute is administrative convenience. Given the interest of the individual affected, I do not think a State may, after declaring itself indifferent between a fine and jail, rely on the convenience of the latter as a constitutionally acceptable means for enforcing its interest, given the existence of less restrictive alternatives. Cf. *Mullane* v. *Central Hanover Trust Co.*, 339 U. S. 306 (1950).

The second conceivable justification is that the jail alternative serves a penological purpose that cannot be served by collection of a fine over time. It is clear that having declared itself satisfied by a fine, the alternative of jail to a fine serves neither a rehabilitative nor a retributive interest. The question is, then, whether the requirement of a lump-sum payment can be sustained as a rational legislative determination that deterrence is effective only when a fine is exacted at once after sentence and by lump sum, rather than over a term. This is a highly doubtful proposition, since, apart from the mere fact of conviction and the humiliation associated with it and the token of punishment evidenced by the for-

feiture, the deterrent effect of a fine is apt to derive more from its pinch on the purse than the time of payment.

That the Illinois statute represents a considered judgment, evincing the belief that jail is a rational and necessary trade-off to punish the individual who possesses no accumulated assets seems most unlikely, since the substitute sentence provision, phrased in terms of a judgment collection statute, does not impose a discretionary jail term as an alternative sentence, but rather equates days in jail with a fixed sum. Thus, given that the only conceivable justification for this statute that would satisfy due process—that a lump-sum fine is a better deterrent than one payable over a period of time—is the one that is least likely to represent a considered legislative judgment, I would hold this statute invalid.

The conclusion I reach is only that when a State declares its penal interest may be satisfied by a fine or a forfeiture in combination with a jail term the administrative inconvenience in a judgment collection procedure does not, as a matter of due process, justify sending to jail, or extending the jail term of, individuals who possess no accumulated assets.* I would reserve the question as to whether a considered legislative judgment that a lump-sum fine is the only effective kind of forfeiture for deterrence and that the alternative must be jail, would be constitutional. It follows, *a fortiori,* that no conclusion reached herein casts any doubt on the conventional "$30 or 30 days" if the legislature decides that should be the *penalty* for the crime. Note, Discriminations Against the Poor and the Fourteenth Amendment, 81 Harv. L. Rev. 435 (1967). Such a statute

---

*In this regard, unlike the Court, I see no distinction between circumstances where the State through its judicial agent determines that effective punishment requires less than the maximum prison term plus a fine, or a fine alone, and the circumstances of this case.

evinces the perfectly rational determination that some individuals will be adequately punished by a money fine, and others, indifferent to money—whether by virtue of indigency or other reasons—can be punished only by a jail term. Still more patently nothing said herein precludes the State from punishing ultimately by jail individuals who fail to pay fines or imprisoning immediately individuals who, in the judgment of a court, will not undertake to pay their fines.

On these premises I join the Court's judgment vacating appellant's sentence and remanding to the Supreme Court of Illinois to afford it an opportunity to instruct the sentencing judge as to any permissible alternatives under Illinois law. It may be that Illinois courts have the power to fashion a procedure pending further consideration of this problem by the state legislature. Cf. *Rosado* v. *Wyman*, 397 U. S. 397, 421–422 (1970), and my opinion concurring in the result in *Welsh* v. *United States*, 398 U. S. 333, 344 (1970).