[Crim. No. 13885. First Dist., Div. Two. Mar. 10, 1975.]

In re DAN SIEGEL et al. on Habeas Corpus.

COUNSEL

Mintz, Giller, Himmelman & Mintz and Lincoln N. Mintz for Petitioners.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, Derald E. Granberg and April Kestell Cassou, Deputy Attorneys General, for Respondent.

OPINION

**THE COURT.**—Petitioners, attorneys representing a defendant in a criminal case, seek a writ of habeas corpus, contending that they have been illegally imprisoned for nonpayment of fines imposed upon them for contempt of court during the course of the trial. Upon review of the petition, the points and authorities in opposition filed by the Attorney General, and the record, which includes the order of contempt, the minute order remanding petitioners to jail, and transcripts of proceedings relating to the contempts, we have concluded that habeas corpus is the appropriate remedy, that an order to show cause would add nothing to the full presentation already made, and that the writ should issue forthwith.

Our review of the record, in accordance with the rules set forth in *In re Buckley* (1973) 10 Cal.3d 237, 247 [110 Cal.Rptr. 121, 514 P.2d 1201], convinces us that the order adjudging petitioners in contempt, reciting that each petitioner, on January 14, 1975, in the immediate view and presence of the court, after having been warned by the court to refrain from such conduct, made statements which, in effect, accused the judge of lack of integrity, which conduct tended to and did interrupt the due course of the trial in progress, in contempt of the authority of the court, is amply supported by the evidence (*In re Buckley, supra,* pp. 248-255; *In re Grossman* (1972) 24 Cal.App.3d 624 [101 Cal.Rptr. 176]; Code Civ. Proc., § 1209, subds. 1 and 3; Bus. & Prof. Code, § 6068, subd. (b)). The judge had authority to summarily convict and sentence petitioners for the acts of contempt as they occurred (*Codispoti* v. *Pennsylvania* (1974) 418 U.S. 506, 513-514 [41 L.Ed.2d 912, 920, 94 S.Ct. 2687]; *Mayberry* v. *Pennsylvania* (1971) 400 U.S. 455, 463 [27 L.Ed.2d 532, 538-539, 91 S.Ct. 499]; *Hawk* v. *Superior Court* (1974) 42 Cal.App.3d 108, 131-132 [116

Cal.Rptr. 713]), and a fine of $250 imposed upon each petitioner, with execution of the sentence suspended until the last day of trial, was well within the discretion of the court under Code of Civil Procedure section 1218.

We find a fatal defect, however, in proceedings which occurred subsequent thereto. The minute order shows that on January 21, 1975, petitioners appeared before the court, with counsel, for further proceedings relating to the contempt. At that time, petitioners were served with copies of the court's formal contempt order, petitioners' motion for stay of execution of the sentence was denied, and each petitioner was ordered to pay his fine in the sum of $250 forthwith *in full* or be remanded to the county jail until the fine was paid, or until no more than five days had been served.

■ Although in contempt cases additional punishment has been held proper for nonpayment of a fine (see *Ex parte Karlson* (1911) 160 Cal. 378 [117 P. 447]; *In re Victor* (1934) 220 Cal. 729 [32 P.2d 608]), this rule is now subject to the indigency exception contained in *Williams* v. *Illinois* (1970) 399 U.S. 235 [26 L.Ed.2d 586, 90 S.Ct. 2018], and *Tate* v. *Short* (1971) 401 U.S. 395 [28 L.Ed.2d 130, 91 S.Ct. 668] (see 5 Witkin, Cal. Procedure (2d ed.) pp. 3531-3532). California's long-standing practice of ordering imprisonment for nonpayment of fines was reassessed in *In re Antazo* (1970) 3 Cal.3d 100 [89 Cal.Rptr. 255, 473 P.2d 999], in light of the equal protection principles expressed in *Williams*, the court holding that because the state has available to it alternative methods of collecting fines, imprisonment of an indigent defendant solely because he cannot afford to pay a fine constitutes an invidious discrimination based on poverty in violation of the Fourteenth Amendment.

It is clear, however, that the court in *Antazo* did not rule out imprisonment in every instance, for it stated that "We have no doubt that this practice [imprisonment] may properly be used to compel payment of fines in proper cases. [Citations.] Proper use of imprisonment as a coercive mechanism presupposes *an ability to pay* and a *contumacious offender*. In the instant case we deal with the application of the practice to *indigents*. . . . As applied to indigents we fail to see how either the threat or the actuality of imprisonment can force a man who is without funds, to pay a fine. [Citations.]" (*In re Antazo, supra,* p. 114; italics partially added.)

 Petitioner Siegel has alleged in his petition to this court that he is "without funds" to pay a fine in the amount of $250, and petitioner Winograd has alleged that he "does not have cash readily available" to pay a fine in such amount. The transcript of the proceedings on January 21, 1975, reveals that although petitioners' counsel advised the court that his clients did not have the financial ability *at that time* to pay the fines and requested an extension to pay the fines or seek appellate remedy, the judge made no inquiry into petitioners' financial condition nor did he offer petitioners any alternative to imprisonment. He ordered that each petitioner pay the $250 fine or be remanded into custody forthwith.[1]

 It is now the rule that ". . . an indigent who would pay his fine if he could, must be given an option comparable to an offender who is not indigent. When the indigent offender refuses to avail himself of such alternatives at the inception, or defaults or otherwise fails to meet the conditions of the particular alternative which is offered him without a showing of reasonable excuse, the indigent offender becomes in the eyes of the court exactly the same as the contumacious offender who is not indigent. When either of these conditions obtain the offender's *indigency* ceases to be dispositive and he may, consistently with the mandate of the equal protection clause, be relegated to 'working out' his fine by imprisonment." (*In re Antazo, supra,* p. 116.)

 For the purpose of applying the rule of *Antazo,* indigency is a fact to be determined like any other fact, the determination of this fact is for the trial judge, and "Where a proper hearing has been conducted by the trial judge, if there is any substantial evidence to support his findings, it should be affirmed" (*People* v. *Lewis* (1971) 19 Cal.App.3d 1019, 1024 [97 Cal.Rptr. 419]). Under the circumstances shown here, however, upon a record which reveals no inquiry by the judge into the financial condition of petitioners, we cannot hold that the bare statement of the judge, standing alone, that he "disbelieves representation that said defendants did not have ability to pay" may constitute substantial evidence in support of his finding that petitioners had the ability to pay and wilfully failed to do so.

The judgment finding petitioners in contempt for conduct occurring

---

[1]We must assume that the fines were not imposed upon petitioners with the objective of bringing about their eventual imprisonment for its nonpayment for " 'to do so would be to accomplish indirectly as to an indigent that which cannot be done directly.' [Citations.]" (*In re Antazo, supra,* p. 117.) Moreover, in this instance, the judge had discretion, under Code of Civil Procedure section 1218, to impose imprisonment in his original order adjudging petitioners in contempt, but chose instead to impose a fine.

on January 14, 1975, is affirmed. The court's order of January 21, 1975, imposing imprisonment upon petitioners for nonpayment of the fines is vacated. The petition for writ of habeas corpus is granted in part, and petitioners are ordered discharged from any custody based upon proceedings occurring on January 21, 1975. The matter is remanded to the sentencing court for a determination of indigency under standards set forth in *People* v. *Lewis, supra,* pages 1023-1025, and for such other and further orders as may thereafter be appropriate in accordance with views herein expressed.

A petition for a rehearing was denied April 9, 1975.