COMMONWEALTH vs. RICHARD PAYNE.

No. 92-P-147.

Suffolk. September 22, 1992. - November 10, 1992.

Present: BROWN, KASS, & IRELAND, JJ.

Constitutional Law, Plea, Equal protection of laws. Practice, Criminal, Plea, Sentence, Restitution. Restitution.

Where a defendant, in pleading guilty to indictments charging Medicare and Medicaid fraud, agreed to pay $40,000 as restitution pursuant to a plea arrangement under which any sentence of incarceration would be suspended, and the defendant thereafter failed to pay any part of the agreed sum, his equal protection rights were not infringed by the judge's imposing a sentence requiring incarceration without first affording him a hearing to determine whether his failure to make restitution stemmed from wilfulness or from an inability to pay. [556-557] BROWN, J., concurring.

INDICTMENTS found and returned in the Superior Court Department on May 31, 1990.

The cases were heard by Guy Volterra, J.

Francis J. DiMento, Jr., for the defendant.

Ellen B. McGinty, Assistant Attorney General, for the Commonwealth.

KASS, J. As punishment for Medicaid and Medicare fraud,[1] the defendant Payne, a licensed physician, was ordered to make restitution of $40,000. At the time of sentencing, which had been postponed to enable Payne to raise the restitution money, the defendant failed to make restitution. He was, thereupon, sentenced to a year in a house of correction. The point raised on appeal is whether the Superior Court judge, having initially acquiesced in the idea that pun-

---

[1]Specifically, the indictments were under G. L. c. 118E, § 21A, a section of the Medicaid False Claim Act, and under G. L. c. 266, § 30, larceny of over $250.

ishment other than imprisonment would satisfy society's penological objectives, could constitutionally impose a sentence of incarceration without first holding a hearing about whether the defendant's failure to pay the $40,000 stemmed from wilfulness or from an inability to pay. We decide that the judge lawfully sentenced the defendant to prison.

In *Bearden* v. *Georgia*, 461 U.S. 660 (1983), the Court concluded that it offended the equal protection clause of the Fourteenth Amendment to the United States Constitution automatically to revoke probation because the probationer could not pay his fine, "without determining that the [probationer] had not made sufficient bona fide efforts to pay or that adequate alternative forms of punishment did not exist." *Id.* at 662. Similarly, under Massachusetts decisional law, before a judge imprisons a defendant for failure to pay a fine, the judge should inquire into the defendant's ability to pay and into "reasonable alternatives to incarceration, such as a long-term payment schedule or community service." *Commonwealth* v. *Gomes*, 407 Mass. 206, 212-213 (1990). What informs those decisions is the idea that a person in collision with the government ought not to be punished for his poverty.

When considering the application of the *Bearden* and *Gomes* opinions to the facts of the instant case, it is important to observe that in neither of those cases was imprisonment prescribed as the appropriate punishment for the offense committed. *Bearden* involved pleas of guilty to charges of burglary and of theft by receiving stolen property. Under Georgia law relating to first offenses, the trial court placed the defendant on probation and, as a condition of probation, ordered the payment of a $500 fine and $250 in restitution.[2] In the *Gomes* case the transgression was possessing an open container of alcoholic beverages, for which New Bedford city ordinance § 17-10 prescribed a fine of not less than five dollars nor more than $300. *Id.* at 207. Assuming proof of inability to pay in each case, only the very poor would suffer

---

[2]For detail concerning the Georgia First Offender's Act, see the references in *Bearden* v. *Georgia*, 461 U.S. at 662.

imprisonment on account of the offenses committed, an unequal application of the law based on economic circumstances.

Poverty does not, however, immunize a defendant from punishment. When initially determining "whether the State's penological interests require impositon of a term of imprisonment, the sentencing court can consider the entire background of the defendant, including his employment history and financial resources." *Bearden* v. *Georgia*, 461 U.S. at 669-670.

With those principles in mind, we examine the facts of the case before us. Payne offered to enter an *Alford* plea,[3] i.e., he would plead guilty, without admitting the facts alleged against him. He made that plea as part of a bargain with the Attorney General that the government would recommend a sentence of three to five years in State prison, suspended for two years, with probation and restitution of $40,000 to be paid in six weeks. On February 5, 1991, a Superior Court judge accepted that plea and imposed sentence accordingly. Misunderstanding followed almost at once. The defendant thought that $23,804, which the government had already recovered from him, would be applied to the $40,000 restitution figure; the Commonwealth thought not. The Superior Court judge, on motion, vacated the findings of guilty against Payne and his sentence. Whether the restitution was to be net or gross, as well as resentencing, came before a different Superior Court judge.

Between the time of the original plea bargain and the entry of the plea, a new Attorney General had taken office. When the case came before the second Superior Court judge, an assistant attorney general explained that the new Attorney General[4] thought some imprisonment important for the crime involved but was prepared to honor the agreement arrived at by his predecessor. Similarly, the judge expressed himself at the sentencing proceedings on May 13, 1991 (as he had on an earlier occasion), that when professionals such

[3]*North Carolina* v. *Alford*, 400 U.S. 25 (1970).
[4]The new Attorney General was Mr. Scott Harshbarger; his predecessor was Mr. James M. Shannon.

as lawyers, accountants, and physicians "engage in criminal offenses of this sort," they ought to suffer some incarceration, but that he thought he should adhere to the plea bargain which had been struck.

Prior to the May 13, 1991, sentencing proceedings, the parties had appeared before the second Superior Court judge on March 11, 1991, for resolution of whether there was to be a set-off against the $40,000, as the defendant contended. The March 11 proceeding took the form of a change of plea, the parties and the judge having apparently agreed prior to going on the record that the $40,000 were not to be reduced by any amount the Commonwealth had recovered.[5] The judge accepted the *Alford* plea, notwithstanding the reservations he had expressed. To enable the defendant to round up the $40,000, the judge postponed sentencing for two months. He explained to the defendant that if he made restitution before that date, he would receive the agreed upon suspended sentence. Should he fail to make restitution, "then it is my specific intention . . . so that you know the parameters, sir, that I will sentence you to a year in the house of correction . . . and you will serve before you are eligible for probation on that year six months in jail, sir."

Asked if he understood those conditions, the defendant responded, "Yes."

Unlike the circumstances in *Bearden* and *Gomes*, where the prescribed punishments were fines, here the statutory violations were punishable by sentences to State prison. There was, therefore, a legislative expression that the State's penological interests included incarceration. As matter of sound judicial discretion, it was open to the sentencing judge, in the event of a finding of guilty of the offenses charged, to impose sentences requiring incarceration. But for the plea bargain, as we have noted, the second Superior Court judge would have opted for some imprisonment. Here, the plea bargain itself was tantamount to a representation by Payne that he could pay the restitution. Otherwise there would have been

[5]The assistant attorney general represented to the judge that the defendant's aggregate theft exceeded $300,000.

no bargain, and sentencing, assuming he were found guilty, would have taken its normal course. Had the judge opted for incarceration as matter of preference, Payne's financial status would have been irrelevant; had the judge decided that a fine or restitution was not practicable because of the defendant's inability to pay, a sentence of imprisonment would not have been invalid under the Constitution. See *Bearden* v. *Georgia*, 461 U.S. at 669-670.

Payne was not, because of his poverty, deprived of a benefit generally available to others. That is the inequality to be avoided under *Bearden, Gomes,* and cases such as *Griffin* v. *Illinois*, 351 U.S. 12 (1956) (loss of right of appeal because of defendant's inability to pay for a stenographic transcript), and *Williams* v. *Illinois*, 399 U.S. 235 (1970) (failure to pay fine levied in addition to jail sentence resulted in additional period of imprisonment beyond statutory maximum for the offense). Rather, Payne was offered the privilege of making restitution as part of a plea bargain, with the express condition that, should he not hold up his end of the bargain, a sentence of incarceration would be imposed. Such a plan of punishment is consistent with the discretion of a judge to choose between incarceration and payments, or a combination of them, in the first instance.

Although the judge did not hold a separate hearing on Payne's ability to pay, there is implicit in the judge's remarks to him at the May 13, 1991, sentencing proceeding a finding by the judge that Payne had made no effort to pay restitution in whole or in part and that he had made no effort to liquidate assets which he owned. Such a view was justified for the reason, if no other, that this was the third occasion on which the defendant had asked for time to make restitution and, at the time of the May 13, 1991, sentencing hearing, he had not reduced the sum due by so much as a dollar.

The determination by the Superior Court judge that he possessed authority to impose the sentence of incarceration is affirmed.

*Judgments affirmed.*

BROWN, J. (concurring). The short answer to the defendant's contention here is that "a deal is a deal." The Commonwealth maintained that the defendant stole in excess of $300,000 of the public's money. The defendant agreed to give back $40,000. That was the deal and, considering the alternative, i.e., a sentence to State prison, it was a very good deal for the defendant.

I agree wholeheartedly with the views expressed by the second Superior Court judge, that when professionals such as lawyers, accountants, and physicians engage in criminal offenses of this sort, they ought to suffer some incarceration. Jails should not be populated only by poor people. We now can see clearly that "[a] pen in the hand of a defrauding provider of services to the public [is] as dangerous and damaging to society as a gun in the hand of a robber." *Commonwealth* v. *Leavitt*, 17 Mass. App. Ct. 585, 597 (1984) (Brown, J., concurring). As we said in the *Leavitt* case, if people commit those kinds of crimes, they must be prepared to do some jail time. In the vernacular, they ought to hear steel "clank behind them."