**Guillermo TORRES et al.,**
**Plaintiffs,**

v.

**Earl BUTZ, Individually and as Secretary of the U. S. Department of Agriculture, et al., Defendants.**

**No. 73 C 1446.**

United States District Court,
N. D. Illinois, E. D.

Aug. 1, 1975.

Joel D. Stein, Charles Wolfinger, and James O. Latturner, Uptown Neighborhood Legal Services, Chicago, Ill., for plaintiffs.

Samuel Skinner, U. S. Atty., Fredric B. Weinstein, Wm. J. Scott, Atty. Gen., Michael J. Murray, Chicago Board of Education, Roger H. Simon, Jr., Chicago, Ill., for defendants.

### MEMORANDUM OPINION AND ORDER

KIRKLAND, District Judge.

This matter comes before the Court on motions by plaintiffs and each of the defendants for summary judgment. This is an action for declaratory judgment and other relief, which seeks enforcement of rights under the Federal School Breakfast Program ("Breakfast Program") of the Child Nutrition Act ("The Act"), 42 U.S.C. § 1771 *et seq.* and under the Fifth and Fourteenth Amendments to the United States Constitution. Jurisdiction is invoked pursuant to 28 U.S.C. §§ 1331, 1337, 1361, 1343(3) and (4), 5 U.S.C. § 702 and the Fifth and Fourteenth Amendments.

Plaintiffs are school children who seek to enforce their right to receive a free breakfast at school under the Breakfast Program. The named plaintiffs are twelve children from poor families who are eligible for, but do not receive, the free breakfast to which they claim they are entitled. They attend schools in which the Chicago Board of Education ("BOARD") does not operate the Breakfast Program.

This matter was certified as a class action by prior order of this Court. The class consists of approximately 140,000 students who are eligible for, but do not receive, a free breakfast, only because they attend schools in which the defendant Board does not operate this Program.

Defendants are the Board, the Chicago Superintendent of Schools, the Chicago Director of the Bureau of Lunchrooms, the Illinois State Superintendent of Education ("Superintendent"), his Chief of School Food Services and the Secretary of the Department of Agriculture ("Secretary").

Plaintiffs have moved for summary judgment on all three counts of the Second Amended Complaint. Each of the local, state and federal defendants have also moved for summary judgment. The facts are not in dispute.

As a preliminary matter, local defendants argue that plaintiffs are without standing to sue and that the case is moot, based on the fact that certain of the named plaintiffs have never requested the Breakfast Program in their schools and that certain other named plaintiffs are now receiving free breakfasts.

■ Having been certified as a class action, this case is not mooted by any alleged lack of standing or lack of adversary interest by the named plaintiffs. *Sosna v. Iowa,* 419 U.S. 393, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975).

■ The case is not moot as to those named plaintiffs who presently participate in the Breakfast Program, because it is not a remote possibility that they may soon attend one of the 485 schools which do not offer the Program or that their school may not elect to continue participation in the Program.

Likewise, the fact that certain named plaintiffs have failed to request a Program in their school does not prevent standing to sue. The necessity of such a request is in issue here.

Several important questions are presented by this case, relating to Congressional intent as to the administrative level at which the decision should be made to participate in the Breakfast Program and to whether priority must be given to particularly needy schools.

Plaintiffs allege that the Act, in conjunction with pertinent regulations, places an affirmative duty on defendants to insure that every eligible child in Chicago public schools who desires it be provided with free breakfast.

Defendants deny they have any such duty and argue instead that they have only the duty to extend the program to those individual schools whose principals have requested it. The Superintendent agrees there is a duty to apply, which rests either on the local school or the Board, but denies the Superintendent has any affirmative duty to compel such application. Thus, the primary issue is whether the Board must assume the responsibility for insuring that each eligible child receives a free breakfast, without requiring formal application by his school.

### LEGISLATIVE BACKGROUND

The Breakfast Program is part of a comprehensive federal plan designed to improve the quality of education for needy children by insuring that hunger will not interfere with the learning process. Other federal programs are the National School Lunch Program ("Lunch Program"), 42 U.S.C. § 1751 *et seq.* and the Special Milk Program, 42 U.S.C. § 1772.

The Act authorizes grants of federal funds and commodities to each State for establishment and operation of non-profit Breakfast Programs in its schools. Section 1773 provides unlimited funds, through an open-ended appropriation for each fiscal year, to reimburse a State for the cost of food and its preparation for all breakfasts served. Section 1774(a) provides that forty million dollars shall be allocated among participating States for fiscal years 1973–1975, for purchase of equipment for the Breakfast and Lunch Programs by "schools drawing attendance from areas in which poor economic conditions exist . . ." Section 1771 authorizes the USDA to purchase and donate commodities to participating States. Section 1779 charges the USDA with administration of the program at the federal level, including promulgation of implementing regulations. See also 7 CFR § 220.

Participation by a State is voluntary. For participating States, the Act places responsibility for state level administration of the Breakfast Program in the "state education agency", 7 CFR § 220.-2(v), which in Illinois is the State Superintendent of Education ("Superintendent"). Each year the Superintendent must enter into a written agreement with the USDA to comply with the Act and regulations issued thereunder as a condition to receipt by the State of federal funds. 7 CFR § 220.3(c). He is also required to monitor operation of the Program in the State. 42 U.S.C. § 1773; 7 CFR § 220.3(b).

The School Food Authority is that entity defined by USDA regulations as the ". . . governing body which is responsible for the administration of one or more schools and which has legal authority to operate a breakfast or lunch program therein . . ." 7 CFR § 220.2(q–1). The Board of Education is the School Food Authority for all Chicago public schools. The USDA regulations designate the School Food Authority (hereinafter referred to as the Board) as the body which shall annually apply to the Superintendent to operate the Program in schools within its jurisdiction. 7 CFR § 220.7(a). Regulations also provide that when this application is approved, the Board must execute an

agreement with the Superintendent to operate the program in compliance with federal law. 7 CFR § 220(e).

Prior to each fiscal year, the USDA establishes national income guidelines for the determination of a student's eligibility for free breakfasts. 42 U.S.C. §§ 1758(b), 1773(e). The Superintendent may establish family income guidelines for free meals not more than 25% above the USDA level. The Board is required to use the Superintendent's eligibility guidelines. 42 U.S.C. § 1758(b). Children whose family income meets these income guidelines are entitled to free breakfasts. 42 U.S.C. § 1773(c). Like related federally funded programs, the money appropriated by Congress is distributed by the USDA to the Superintendent, who in turn reimburses the Board. The Board is reimbursed for each breakfast served at rates set by the USDA, which rates are adjusted semi-annually. 42 U.S.C. § 1759a; 7 CFR § 220.4(c). If any school is unable to operate the Program within normal reimbursement rates, the Board can apply in its behalf for reimbursement of 100% of the cost of any breakfast served up to $0.45. 42 U.S.C. § 1773(d); 7 CFR § 220.9(b–1).

The Board also receives an additional $0.15 from the state of Illinois under the Illinois Free Breakfast and Lunch Program for each free breakfast served in its schools. Ch. 122, Ill.Rev.Stat. § 712.2 (1973).

## FACTUAL BACKGROUND

During the 1973–74 school year approximately 140,000 eligible children in Chicago public schools did not participate in the Breakfast Program. This figure represents nearly two thirds of all eligible children in Chicago public schools. Of 620 Chicago public schools, 490 did not take part in the Breakfast Program. Only 72,000 children attending 130 schools received free breakfasts.

Board policy placed responsibility upon the principal of each school for application to operate the program in his school. The Board applied to the Superintendent to operate the Breakfast Program only in those schools whose principals had requested it.

The 130 schools named in the Board's application did not enroll the highest percentage or largest numbers of eligible students. Prior to and after making application, the Board knew which schools enrolled the greatest numbers and highest percentages of eligible children. Of the non-participating schools, 42 had enrollments of 80% or more eligible students in average daily attendance; 26 between 70 and 79%; 34 between 60 and 69%; and 26 between 50 and 59%. Statistics for the 1974–75 school year were substantially the same.

At all times during the school years, funds were available to expand the Program into all non-participating schools. The Superintendent, prior to approving the Board's application, knew that the Board could have extended the program to all non-participating schools. The Superintendent also knew that the Board had not applied to operate the Program in those schools enrolling the highest percentages or greatest numbers of eligible children. Notwithstanding, the Superintendent approved the Board's application to operate the Program in only 130 schools and did not require the Board to place the Program first in those schools having the greatest need or to expand the Program to all 620 schools so as to maximize the utilization of available funds.

As a condition to receipt of federal funds, the Superintendent entered into a written agreement with the USDA to administer the Breakfast Program in Illinois. Prior to and after execution of this agreement, the Secretary knew that the Board had not extended the Program to all schools enrolling eligible children, so as to maximize the utilization of available funds. The Secretary also knew that the Board had not applied to operate and was not operating the Program in those schools enrolling the greatest numbers or highest percentages

of eligible students. The Secretary did not require the Superintendent to compel the Board to expand the Program to any of the non-participating needy schools or to implement it first in the neediest schools. The policies of all defendants remained substantially the same during the 1974–75 school year.

## DISCUSSION

Plaintiffs allege that defendants have administered the Breakfast Program in a manner which is violative of the requirements of the Act in that: (1) they have failed to extend the Program within the available funds to all Chicago public schools enrolling children who are eligible for free breakfasts; and (2) they have failed to implement the program first in those schools enrolling the highest percentages or greatest numbers of needy children.

When the Program was begun in 1966 its aim was the "needy school". Subsequent amendments redirected the focus of the program. As admitted by the Secretary, and as clearly seen from recorded debates, it was the intent of Congress that every needy child should be entitled to a free breakfast without regard to whether he attended a "needy school". The ceiling on appropriations was removed and the Secretary was directed to assist in implementation of the Program in all schools which applied for participation, without regard to their relative poverty level.

■ Section 1773(a), which authorizes appropriations, was amended in 1972 to provide:

> There is hereby authorized to be appropriated such sums as are necessary . . . to enable the Secretary to carry out a program to assist the States through grants-in-aid and other means to initiate, maintain or expand nonprofit breakfast programs in all schools which make application for assistance and agree to carry out a nonprofit breakfast program in accordance with this chapter.

The local and federal defendants place great emphasis on the fact that the statutory words apparently contemplate application by the local school. This Court agrees that it was indeed the intent of Congress that participation in the Breakfast Program should be voluntary, but cannot agree with defendants' view as to the level at which voluntary participation should occur.

■ This Court finds that, consistent with the language of the Act and that of the regulations, the word "school" should properly be interpreted to mean the School Food Authority. Section 1773(a) provides that the program shall be initiated in "all schools *which make application for assistance and agree to carry out a nonprofit breakfast program* . . ." (emphasis added)

Examination of the regulations discloses that only the School Food Authority has authority to make application for the program, to enter into a written agreement with the State, to operate the program and to receive reimbursements for breakfasts served. The School Food Authority is defined in the regulations as that "governing body which is responsible for the administration of one or more schools and which has legal authority to operate a breakfast or lunch program therein . . ." 7 CFR § 220.-2(q–1) The Board of Education or its administrative equivalent is the unit which satisfies this definition.

■ Under the regulations, then, the local school lacks authority to apply for assistance or enter into the required agreement. Only the Board can do so. The most reasonable reading of the Act and its regulations is that the Board, rather than the local school, is the proper administrative unit to apply for participation in the Breakfast Program.

The next issue is whether the Board has an affirmative duty to apply for the program on behalf of all needy children within its jurisdiction.

■ It was the intent of Congress, as evidenced by the debates, that every eli-

gible child be entitled to a free breakfast. The regulations, implemented to effectuate that intent, require that:

> Each School Food Authority for schools selected for participation in the . . . Program shall enter into a written agreement with the State Agency . . . Such agreements shall provide that the School Food Authority shall, with respect to participating schools under its jurisdiction:
>
> (4) *supply breakfast without cost or at reduced price to all children* who are determined by the School Food Authority to be unable to pay the full price thereof. (emphasis added) 7 CFR § 220.7(e)

■ This Court having held that the Board, rather than the local school, must elect voluntary participation in the Breakfast Program, there can be no logical reason for permitting the Board to apply on behalf of some needy children and not others. The Court is of the opinion that the regulations require that, once voluntary participation is elected, the Board must apply on behalf of all needy children. The conduct of the Board, in making selective application, is not within the spirit of the Act.

Plaintiffs next argue that the Board has a duty to implement the Breakfast Program in needy schools before doing so in less needy schools. Plaintiffs place primary reliance on Section 1773(c) which provides:

> (c) Funds apportioned and paid to any State for the purpose of this section shall be disbursed by the State educational agency to schools selected by the State educational agency to assist such schools in financing the costs of operating a breakfast program . . .
>
> In selecting schools for participation, the State educational agency shall, to the extent practicable, give first consideration to those schools drawing attendance from areas in which poor economic conditions exist, to those

schools in which a substantial proportion of the children enrolled must travel long distances daily, and to those schools in which there is a special need for improving the nutrition and dietary practices of children of working mothers and children from low-income families.

Plaintiffs argue that this language indicates Congressional intent that needy schools should be designated to participate in the program before less needy schools. The Secretary argues that all such poverty priorities were abolished by Congressional amendment and that the only priority remaining in the Act is one which relates to reimbursement.

■ The disputed language is found in a section devoted entirely to the subject of school reimbursement. This Court is of the opinion, therefore, that the priority set out in Section 1773(c) relates only to reimbursement and not to initial selection of schools for participation in the Breakfast Program.

It is significant, as noted in the House Debates, that one of the major changes effected by the 1972 amendments was that:

> . . . the Secretary of Agriculture and the States must immediately provide Federal funds for each school that applies for the breakfast program without regard to any priorities based upon need, distance traveled by the pupils or any other criteria. This mandate will be implemented through the appropriation of whatever amount of funds are necessary to see to it that every school making application for the program will obtain it. (Representative Meeds on the amendments to H.B. 14896, Congressional Record, June 29, 1972 at 23417)

■ It is clear from a reading of the Congressional Record that the old priority system was expressly rejected. A prime feature of the 1972 amendments was that, immediately upon application, any school became entitled to participate in the Breakfast Program.

The only remaining priority was for reimbursement to needy schools first. Removal of the priority system for implementation was premised on obvious recognition that a needy child should not be penalized because he happens to attend a school with few needy students.

Plaintiffs next argue that the Superintendent has a duty to require the Board to apply on behalf of all eligible children within its jurisdiction. In support of their claim, plaintiffs rely on those regulations which require the Superintendent to: (1) extend the Breakfast Program to children attending schools in areas where poor economic conditions exist; 7 CFR § 220.7(c); (2) give priority to poorer areas, Section 1773(c), and (3) work with the Board to plan for the acquisition of equipment needed to operate an adequate feeding program in any such school under the Breakfast Program, 7 CFR §§ 220.15 and 220.16(b).

Since the priority argument based on Section 1773(c) has already been rejected, the Superintendent asserts that the only basis for such an obligation would be 7 CFR § 220.7(c), which, he argues, only requires him to "make available, promote, publicize and encourage participation in the program" by individual schools and to approve the Board's application. That regulation provides that:

> State agencies . . . have a positive obligation, however, to extend the benefits of the School Breakfast Program to children attending schools in areas in which poor economic conditions exist.

The Court must also consider the language of Section 1759a which provides that:

> . . . each State educational agency shall submit to the Secretary, for approval by him as a prerequisite to receipt of Federal funds . . . a State plan of child nutrition operations for the following fiscal year, which shall include, as a minimum, a description of the manner in which the State educational agency proposes

> (C) to use the funds provided under . . . section 1773 [of the Breakfast Program] within the State to the maximum extent practicable to reach needy children.

■ This language cannot reasonably be interpreted as a reimbursement priority requirement, since there is an open-ended appropriation to pay all necessary costs. The most reasonable reading of this section is that the Superintendent is required to agree to implement the program to the maximum extent practicable to reach needy children. He must make a genuine effort to solicit and encourage participation by all schools within the State which enroll needy children.

The Superintendent is also charged by 7 CFR § 220.3(b) with responsibility for State-level administration of the Breakfast Program. That regulation also requires that:

> . . . (c) each State agency shall enter into a written agreement with the Department for the administration of the program in the State in accordance with the provisions of this part.

■ The duty placed upon the Superintendent to encourage participation, by all schools, in conjunction with his duties to extend the benefits of the program to children attending needy schools and to administer the Program in conformity with federal law, require that the Superintendent not approve the Board's application until and unless it is made on behalf of all needy children.

■ The Court is likewise of the opinion that the Secretary has a duty to insure that both the local and State defendants have complied with the requirements of the Act, as here interpreted. The Secretary is charged by Section 1779 with administering the Breakfast Program and the implementation of any regulations he deems necessary to carry out the Program. Section 1773(a) provides that the Secretary shall assist the States to initiate, maintain and expand the Programs in all schools which both

apply and agree to comply with federal law.

These sections, taken with 7 CFR § 220.10, which provides that reimbursement payments may be made only after execution of the required agreements, confirm that the role of the Secretary is properly more than passive administration. The Secretary was intended by Congress to be actively involved in the administration of the Program and to insure that the Program was being carried out according to federal law.

To say, as the Secretary and Superintendent suggest, that they have no duty other than routine acceptance of local applications, is to defeat effective administration of the Program.

Plaintiffs next argue that the policies and actions of defendants were violative of due process and equal protection.

Plaintiffs argue that delegation of the application procedure by the Board to school principals is violative of procedural and substantive due process requirements of the Fifth and Fourteenth Amendments in that: (1) the decision to initiate the Program in any particular school is left up to the complete and unreviewed discretion of each school principal; and (2) the resulting pattern of implementation within the Board's jurisdiction has no rational relation to the purposes of the Act.

■ Defendant Board's argument that plaintiffs have not been denied due process because they have no "property interest" in a free breakfast, must be rejected. As was made clear in *Roth v. Board of Regents,* 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), a property interest in statutory benefits is protected by due process requirements if the person has a "legitimate claim of entitlement" to them under the legislation creating the benefits.

Plaintiffs are entitled to free breakfasts because: (1) they are financially eligible; and (2) they attend schools within the jurisdiction of the Board which has applied for the Program.

■ Accordingly, this Court holds that the granting of unreviewed and uncontrolled discretion to the principals was violative of procedural due process. See *Holmes v. New York Housing Authority,* 398 F.2d 262 (2nd Cir. 1968).

This Court also agrees with plaintiffs' argument that this denial of procedural due process results in an arbitrary pattern of program implementation which is violative of substantive due process.

■ Substantive due process requires that governmental action have some factual relationship to its goal which is neither trivial nor capricious. *Fisher v. Snyder,* 476 F.2d 375, 376–377 (8th Cir. 1973). The factors which should be considered in an analysis of governmental actions were set out in *Williams v. Illinois,* 399 U.S. 235, 260, 90 S.Ct. 2018, 2031, 26 L.Ed.2d 586 (1970). *Mr. Justice* Harlan, in a concurring opinion, stated them to be:

> . . . the nature of the individual interest affected, the extent to which it is affected, the rationality of the connection between the legislative means and purpose, the existence of alternative means for effectuating the purpose, and the degree of confidence . . . (the court) . . . may have that the statute reflects legislative concern for the purpose that would legitimately support the means chosen.

It was the intent of Congress that each needy child in a participating school should be eligible for and receive a free breakfast, without reference to whether he attended a needy school. To that end, it authorized open-ended appropriations and abolished any priority system. The actions of the Board, which were approved by the other defendants, have no rational relationship to that purpose. Accordingly, this Court holds that the defendants have administered the Breakfast Program in a manner which is violative of due process.

The last question is whether the Program has been implemented in a manner which is violative of equal protection. This Court is of the opinion that it has. The test, set out in *Reed v. Reed*, 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971), is that:

> a classification 'must be reasonable, not arbitrary, and must rest on some ground of difference having a fair and substantial relation to the object of the legislation so that all persons similarly circumscribed shall be treated alike.' (404 U.S. at 76, 92 S.Ct. at 254)

The stated purpose of the Breakfast Program is to insure that each eligible child in a participating school receives a free breakfast, so as to enable him to better concentrate on his education. The selection and classification of children who shall benefit from this Program, based upon the fortuitous circumstance that their principal did or did not elect to apply, is without a rational basis.

Accordingly, this Court holds that the Board's selective implementation in various schools within its jurisdiction was a denial of equal protection. As was pointed out in *Norwalk CORE v. Norwalk Redevelopment Agency*, 395 F.2d 920, 931 (2nd Cir. 1968):

> "Equal protection of the laws" means more than merely the absence of governmental action designed to discriminate . . . "[W]e now firmly recognize that the arbitrary quality of thoughtlessness can be as disastrous and unfair to private rights and the public interest as the perversity of a willful scheme" . . . (395 F.2d at 931)

This Court holds that defendants have administered the Breakfast Program in the Chicago public schools in violation of the Child Nutrition Act and the regulations issued thereunder, and that this method of improper implementation violated plaintiffs' rights to due process and equal protection as guaranteed by the Fifth and Fourteenth Amendments to the Constitution.

Defendants Board, Redmond and Jones are enjoined and directed to extend the Breakfast Program to all needy children under their jurisdiction.

Defendants Butz, Cronin and Ohlszen are enjoined and directed to require defendants Board, Redmond and Jones to comply with the requirements of the Breakfast Act, as here interpreted, or alternatively to withhold federal funds for the Breakfast Program in the Chicago public schools until such time as these defendants comply with said requirements.

Order to be entered in accordance with this opinion.