In the Matter of Supplementary Proceedings, UNITED STATES of America, Plaintiff and Judgment-Creditor, Appellee,

v.

Lindsay L. BAIRD, Defendant and Judgment-Debtor, Appellant.

No. 8, Docket 24082.

United States Court of Appeals Second Circuit.

Argued Dec. 10, 1956.

Decided Feb. 4, 1957.

Paul W. Williams, U. S. Atty. for the Southern Dist. of New York, New York City (Edwin J. Wesely and Harold J. Raby, Asst. U. S. Attys., New York City, of counsel), for appellee.

James Carroll, Garden City, N. Y., for appellant.

Before SWAN, MEDINA and WATERMAN, Circuit Judges.

MEDINA, Circuit Judge.

We have recently dealt with an attempt to assimilate into the admiralty practice the harsh and often criticized provisions of the New York Civil Prac-

tice Act authorizing in certain cases body executions as a means of collecting money judgments. Archawski v. Hanioti, 2 Cir., 239 F.2d 806. This case presents the allied question, whether the contempt method of collecting judgments authorized by Section 793 of the New York Civil Practice Act is available to the Government as a means of compelling payment of the unpaid balance of a committed fine imposed on appellant by the District Court in a criminal case.

On June 26, 1945, appellant was convicted in the United States District Court for the Southern District of New York of violating the Second War Powers Act of 1942, 50 U.S.C.A.Appendix, § 633, by using newsprint paper in excess of his quarterly consumption quota. He was sentenced to 60 days in jail and fined $20,000. We affirmed the judgment. United States v. Rewl Publications, 2 Cir., 153 F.2d 610. Appellant served the sentence and an additional 30 days, after which he made application for his release from imprisonment, offering to take the poor person's oath provided in 18 U.S.C. § 3569, entitled "Discharge of indigent prisoner." At that time he had paid only $6,547.06 of the fine.

The Commissioner denied the application for discharge "due to the fact that the government has information that the defendant is concealing moneys"; but after some negotiations and on August 8, 1946, appellant paid another $1,099.40 on account, and he requested that certain "equipments" be not "attached" by the Government and that he be permitted to pay the balance of the fine in monthly installments of not less than $100 each, beginning November 1, 1946. Thereupon he was permitted to take the oath of inability to pay and he was discharged from imprisonment.

There ensued a long series of proceedings. He paid for a time; a bailable attachment was issued against him; various orders were made directing the payment of the balance in installments and a number of contempt proceedings were started and then withdrawn. This culminated in an order of Judge Murphy, consented to by appellant, made on March 10, 1955, which reduced the installment payments to $25 each month through December 1955, and $100 each month thereafter "until the entire unpaid balance shall be paid in full."

Appellant again fell into arrears. After personal service of an order to show cause why he should not be punished for contempt, for failure to obey the directions in Judge Murphy's order, a hearing was had and he was on March 21, 1956 adjudged in contempt by Judge Dawson; and this appeal followed. The order is entitled "In the Matter of Supplementary Proceedings, United States of America, Plaintiff and Judgment Creditor, v. Lindsey L. Baird, Defendant and Judgment Debtor"; and it directs appellant's imprisonment "until all past due installments of fine are paid, as provided in the amended order of Honorable Thomas F. Murphy, or the judgment debtor is otherwise discharged, according to law." The execution of this commitment has been stayed by order of this court during the pendency of this appeal.

. We are not concerned with the character of appellant nor with the sincerity of his protestations of inability to pay the balance of the criminal fine imposed upon him. Nor, in the view we take of the case, need we search the record to see whether all the intricate requirements of the New York Civil Practice Act in such matters have been complied with.

It is the position of the Government that we cannot pass on the validity of Judge Murphy's order because no appeal was taken from that order. But we take a different view.

It is now settled law that the validity of the underlying order may be reviewed on an appeal from the order of commitment for contempt, if the contempt adjudication is civil in character. United States v. United Mine Workers, 330 U.S. 258, 294–295, 67 S.Ct. 677, 91 L.Ed. 884. See also Nye v. United States, 313 U.S. 33, 42, 61 S.Ct. 810, 85 L.Ed.

1192; McCrone v. United States, 307 U.S. 61, 64, 59 S.Ct. 685, 83 L.Ed. 1108; Duell v. Duell, 85 U.S.App.D.C. 78, 178 F. 2d 683, 14 A.L.R.2d 560. Where the punishment is wholly remedial, serves only the purposes of the complainant, and is not intended as a deterrent to offenses against the public, the contempt adjudication is plainly civil in character. Such is the case here, despite the fact that the proceedings constitute an attempt to collect a fine imposed on appellant in a criminal case, and despite the immaterial circumstance that the contempt proceeding was brought on for hearing in the "Criminal Motion Part, Room 318" in the United States Courthouse in the Southern District of New York. The order of commitment clearly directs the imprisonment of appellant "until all past due installments of fine are paid." Accordingly, we hold that the purpose of the imprisonment was collection of the overdue installments rather than punishment for disobedience of Judge Murphy's order.

■ We turn to the merits. The question is interesting and novel. In substance the argument of the Government is that "the collection of fines and penalties" is governed by the procedure applicable to the "collection of a civil judgment"; Rules of Criminal Procedure, Rule 54(b) (5), 18 U.S.C.; Rules of Civil Procedure, Rule 69(a), 28 U.S.C.; that the whole scheme of Article 45 of the New York Civil Practice Act, entitled "Proceedings Supplementary to Judgment," including Section 793 thereof, is available for the collection of this money judgment, because Rule 69(a) states that the procedure on execution and in proceedings supplementary to and in aid of a judgment or execution "shall be in accordance with the practice and procedure of the state in which the district court is held." It is not disputed that New York Civil Practice Act, § 793, authorizes, under certain conditions and with certain safeguards against abuse, an order directing the judgment-debtor to pay the judgment in installments and it further specifically provides that a failure or neglect to comply with such an order "shall constitute a contempt, punishable civilly."

■ We hold, however, that the federal statutes governing the "Collection and payment of fines and penalties," and the "Discharge of indigent prisoner", 18 U.S.C. §§ 3565, 3569, provide an exclusive pattern of procedure to be followed in the matter of committed fines imposed in criminal cases; and that, if a defendant is released upon taking what is described in the old cases as "the pauper's oath," subsequent to his remaining in prison for 30 days after the expiration of such part of the judgment of conviction as constitutes sentence for a prison term, the Government is restricted thereafter to the prosecution of proceedings against his property and may not, as here, proceed against his person.

Section 3565 provides:

"§ 3565. Collection and payment of fines and penalties

"In all criminal cases in which judgment or sentence is rendered, imposing the payment of a fine or penalty, whether alone or with any other kind of punishment, such judgment, so far as the fine or penalty is concerned, may be enforced by execution against the property of the defendant in like manner as judgments in civil cases. Where the judgment directs imprisonment until the fine or penalty imposed is paid, the issue of execution on the judgment shall not discharge the defendant from imprisonment until the amount of the judgment is paid."

Thus provision is made for the enforcement of the judgment "by execution against the property of the defendant in like manner as judgments in civil cases." Such remedy as exists against his person is limited by Section 3569.[1] These Sections 3565 and 3569 clearly do not contemplate any conditional re-

---

1. "§ 3569. Discharge of indigent prisoner

"(a) When a poor convict, sentenced

for violation of any law of the United States by any court established by enactment of Congress, to be imprisoned and

lease from custody, nor is any procedure prescribed for reimprisonment should it later develop that the oath was falsely sworn. Moreover, common humanity and good sense would seem to support the statutory scheme thus briefly outlined. Defendant may be kept in prison until the committed fine has been paid or until he is discharged after qualifying for release through favorable action taken on his application for leave to take the oath of inability to pay. The only other means of collecting the fine is by execution against defendant's property. Otherwise he might remain in prison indefinitely.

But the Government claims that the procedure followed here is really an "execution against property," and we are told that Pierce v. United States, 255 U. S. 398, 41 S.Ct. 365, 65 L.Ed. 697, precludes us from holding otherwise.

In the Pierce case, after imposition of a criminal fine, the defendant corporation transferred all its assets and a proceeding in the nature of a creditor's bill was brought in equity against the transferees. The Supreme Court sustained the bill. The principal argument of the transferees was that a criminal fine was not a debt. This argument was rejected; and, in the course of a brief discussion of the point, Justice Brandeis commented on the phraseology of the statute, now Section 3565, and said it was applicable to the case before the court, as "A judgment creditor's bill is in essence an equitable execution comparable to proceedings supplementary to execution", 255 U.S. at pages 401–402, 41 S.Ct. at page 366. And so it is. In a proceeding designed to reach the property of defendant it is hardly likely that any court would hold that a mere trans-

pay a fine, or fine and costs, or to pay a fine, or fine and costs, has been confined in prison thirty days, solely for the nonpayment of such fine, or fine and costs, such convict may make application in writing to the nearest United States commissioner in the district where he is imprisoned setting forth his inability to pay such fine, or fine and costs, and after notice to the district attorney of the United States, who may appear, offer evidence, and be heard, the commissioner shall proceed to hear and determine the matter.

"If on examination it shall appear to him that such convict is unable to pay such fine, or fine and costs, and that he has not any property exceeding $20 in value, except such as is by law exempt from being taken on execution for debt, the commissioner shall administer to him the following oath: 'I do solemnly swear that I have not any property, real or personal, exceeding $20, except such as is by law exempt from being taken on civil process for debt; and that I have no property in any way conveyed or concealed, or in any way disposed of, for my future use or benefit. So help me God.' Upon taking such oath such convict shall be discharged; and the commissioner shall file with the institution in which the convict is confined, a certificate setting forth the facts. In case the convict is found by the commissioner to possess property valued at an amount in excess of said exemption, nevertheless,

if the Attorney General finds that the retention by such convict of all of such property is reasonably necessary for his support or that of his family, such convict shall be released without further imprisonment solely for the nonpayment of such fine, or fine and costs; or if he finds that the retention by such convict of any part of such property is reasonably necessary for his support or that of his family, such convict shall be released without further imprisonment solely for nonpayment of such fine or fine and costs upon payment on account of his fine and costs, of that portion of his property in excess of the amount found to be reasonably necessary for his support or that of his family.

"(b) Any such indigent prisoner in a Federal institution may, in the first instance, make his application to the warden of such institution, who shall have all the powers of a United States Commissioner in such matters, and upon proper showing in support of the application shall administer the oath required by subsection (a) of this section, discharge the prisoner, and file his certificate to that effect in the records of the institution.

"Any such indigent prisoner, to whom the warden shall fail or refuse to administer the oath may apply to the nearest Commissioner for the relief authorized by this section and the Commissioner shall proceed de novo to hear and determine the matter."

fer by the debtor placed the property beyond the creditor's reach.

The argument continues, however, and adverts to the fact that, if the transferees in Pierce disobeyed an order directing them to return the property, they might be punished for contempt. Of course; but there was no danger that such disobedience by the transferees might result in further imprisonment of the debtor. Moreover, our holding here goes no further than to say that, upon his discharge in due course, the judgment imposing the criminal fine exhausted its power to authorize appellant's further imprisonment. That is not to say that he may not be guilty of some new act the consequence of which may be his further incarceration. For example, should he wilfully disobey a lawful order directing him to appear and testify concerning the whereabouts of property claimed to be concealed or secreted, we have no doubt he could be punished for such disobedience. If the present order is to be permitted to stand, however, his imprisonment will be based upon nothing more than a failure to pay the original fine.

Finally, the Government claims that we must affirm the order because appellant consented to it, and because in the beginning the Government relinquished some right to "attach" certain "equipments" in return for appellant's promise to pay the balance of the fine in certain monthly installments. We are told that under these circumstances it is not fair to permit appellant "to play fast and loose" with the court, that he is equitably estopped to challenge the order appealed from.

It would seem strange indeed if the District Courts could extend their powers beyond statutory authorization by mere stipulation. Appellant may have persuaded the Government to request something which it had no right to ask and then ignored his part of the bargain. But he may not be imprisoned for failure to keep his word.

Reversed.