John CALLAHAN, Appellant,

v.

UNITED STATES of America, Appellee.

No. 20816.

United States Court of Appeals Ninth Circuit.

Jan. 17, 1967.

Max M. Klass, Phoenix, Ariz., for appellant.

William P. Copple, U. S. Atty., Morton Sitver, Asst. U. S. Atty., Phoenix, Ariz., for appellee.

Before HAMLEY and MERRILL, Circuit Judges, and BYRNE, Senior District Judge.

BYRNE, Senior District Judge:

Appellant was charged by indictment in eight counts with violations of Title 18 U.S.C. Section 1010.[1] It was alleged in Counts I, III, V, and VII, that for the purpose of obtaining a loan from the First Federal Savings and Loan Association and with the intent that such loan would be offered to and accepted by the F.H.A. for insurance, appellant did willfully and knowingly cause to be made a certain false statement in a document, that is a Supplement to Mortgagee's Application; and Mortgagor's Statement, wherein the borrowers certified that they *intended to occupy* the described home when in fact the appellant well knew that at the time the statement was made, it was false in that the borrowers did not intend to occupy the home.

The allegations in Counts II, IV, VI and VIII are similar except the false statement certified by the borrowers was that they *had paid $100.00 in cash* toward the purchase.

The facts are undisputed that in each instance the appellant, who was an employee of Staggs Bilt Homes, Inc., contacted the borrowers and told them if they would sign the papers necessary to qualify for an F.H.A. loan, he would pay them $100.00. Several of the parties inquired as to the legality and were assured by the appellant that it was perfectly legal. In three of the transactions the borrowers were married couples and in one the borrower was a widow. Each of the couples and the widow received $100.00 from the appellant for signing the documents. In the transactions involving the married couples, in some instances the wife signed both her name and her husband's to papers presented by the appellant, and in some instances the husband signed both names. With respect to the specific document referred to in the indictment,

1. "§ 1010. Federal Housing Administration transactions

"Whoever, for the purpose of obtaining any loan or advance of credit from any person, partnership, association, or corporation with the intent that such loan or advance of credit shall be offered to or accepted by the Federal Housing Administration for insurance, or for the purpose of obtaining any extension or renewal of any loan, advance of credit, or mortgage insured by such Administration, or the acceptance, release, or substitution of any security on such a loan, advance of credit, or for the purpose of influencing in any way the action of such Administration, makes, passes, utters, or publishes any statement, knowing the same to be false, or alters, forges, or counterfeits any instrument, paper, or document, or utters, publishes, or passes as true any instrument, paper, or document, knowing it to have been altered, forged, or counterfeited, or willfully overvalues any security, asset, or income, shall be fined not more than $5,000 or imprisoned not more than two years, or both. June 25, 1948, c. 645, 62 Stat. 751."

in two instances both signatures were placed on the document by the husband, and in one instance the wife signed both names. All of the papers were presented to the borrowers for signature by appellant and were returned to him after they were signed. Each of the borrowers testified that at no time, including the time the signatures were affixed, had they paid $100.00 in cash toward the purchase, nor did they intend to occupy the home, and that they had so informed the defendant. In each case the First Federal Savings and Loan Association made a loan which was insured by the F.H.A. and subsequently there were foreclosure proceedings.

Appellant contends that the indictment was duplicitous in that each count contained an allegation of commission of several distinct and separate offenses in violation of Rule 8(a) Federal Rules of Criminal Procedure, and relies upon the case of Bins v. United States, 331 F.2d 390 (C.A.5). In *Bins* the defendant was charged in one count with two distinct false statements (offenses), one contained in each of two separate documents. In the instant case each false statement (offense) is set forth in a separate count.[2] Duplicity in an indictment is the charging of more than one offense in one count.

After the jury was sworn appellant's counsel requested that the indictment be dismissed on the grounds that the defendant's rights under the 5th and 6th Amendments of the United States Constitution had been violated by actions of the United States Attorney and the United States Marshal. Referring to witnesses subpoenaed by the Government, counsel for the appellant asserted, "these persons were advised that they need not talk to anyone about this case, and that such advice was in such form that it was understood by at least one of these persons to mean that he could not talk to me, counsel for the defendant, and further that the office of the United States Attorney has appended to the lawful process of this Court a squib or scrap of paper instructing these people to appear in the office of the U. S. Attorney for examination". The United States Attorney denied in open court that anyone from his office or the office of the United States Marshal advised the witnesses not to talk to defense counsel. No evidence was presented in support of the assertions.

Both sides have the right to interview witnesses before trial. The record does not disclose whether the appellant's counsel interviewed witnesses subpoenaed by the Government or whether he made any effort to do so. No complaint was made to the Court prior to trial, nor was there any request that the witnesses be properly advised. It was not error for the United States Attorney to request witnesses to come to his office for interview. Appellant's specification that the District Court erred in failing to dismiss the indictment is without merit.

After the jury had retired and deliberated for several hours, the Court called counsel in chambers and advised them he had received a request from the jury for further instructions. He further advised counsel of the written reply he was sending by the bailiff.

While we believe the better practice is to call the jury and orally instruct them in open court, certainly the appellant suffered no prejudice here. Although the United States Attorney objected to the Court's response to the jury's request, the appellant made no objection to the instruction as it tended to lessen his degree of involvement.[3]

2. Appellant also charges the original indictment was duplicitous. However, that indictment was dismissed upon the filing of a superseding indictment. We are concerned only with the superseding indictment upon which he went to trial.

3. THE COURT: I have a question here from the jury.
"Are we allowed to consider Callahan's signature as defense evidence?"
"No."
"Are we allowed to consider Callahan's signature as evidence where it appears

 

  The appellant assigns as error the District Court's post verdict and sentencing procedures. Following the rulings on a post verdict motion in behalf of the appellant, the Court requested appellant to stand up and then stated, "The jury having found you guilty, do you have anything to say before sentence is pronounced upon you?" The appellant remained mute. The Court afforded the appellant an opportunity to make a statement as required by Rule 32(a) F.R.Cr.P.

  In sentencing the appellant, the Court imposed a fine and ordered imprisonment until the fine is paid. This is a matter within the discretion of the District Court (18 U.S.C. § 3565).[4]

A further contention advanced by the appellant is that the trial Court erred in rulings on the admissibility of evidence. We have carefully examined the record and find no prejudicial error.

  The appellant argues that to bring Section 2(b) Title 18, into play, and to punish him as a principal, there must be proof of the commission of a crime by persons with whom he associated. This argument is without force. See United States v. Harris, 4 Cir., 346 F.2d 182, 185; Meridith v. United States, 4 Cir., 238 F.2d 535, 542. In the case before us the appellant *directly caused* the false statements to be made for the purpose of obtaining a loan with the intent that the loan would be offered to and accepted by the F.H.A. for insurance. The evidence was not disputed and it was reasonable for the jury to find that the appellant's acts were willful. With respect to the appellant's guilt, it would not make one iota of difference whether anyone else were also guilty of an offense.

The judgment is affirmed.

---

on Document 12C in evidence, to support the point that he was responsible for furnishing the Supplement to Mortgagors Application to the FHA?"

The Court has answered the note, "No evidence proving Callahan's signature."

MR. GORMLEY: Your Honor, they are allowed to consider the evidence—

THE COURT: I am not going to hear any argument. That is all. You may hand that to the jury.

(Handing paper to the bailiff.)

THE COURT: I can't start in giving them any other thought except that there was no evidence. There was not any evidence put in as to the signature.

MR. GORMLEY: The question was whether they can consider the evidence, and they have the evidence to consider.

Well, your Honor has made his ruling. Just that one item, is all.

MR. KLASS: Is that all you need us for?

THE COURT: That is all I need you for.

4. When counsel indicated that he intended to file a notice of appeal and post a bond, the Court fixed the bond and granted a stay of execution until 11 A.M. the following day.