UNITED STATES of America,
Plaintiff-Appellee,

v.

Maria Delia ESTRADA de CASTILLO,
Defendant-Appellant.

No. 75–2914.

United States Court of Appeals,
Ninth Circuit.

Oct. 20, 1976.

Rehearing and Rehearing En Banc
Denied March 15, 1977.

Jo Ann Diamos (argued), Tucson, Ariz., for defendant-appellant.

James E. Mueller, Asst. U. S. Atty. (argued), Tucson, Ariz., for plaintiff-appellee.

Before ELY and HUFSTEDLER, Circuit Judges, and SMITH,* District Judge.

RUSSELL E. SMITH, District Judge.

The defendant was convicted of selling and disposing of a counterfeit alien registration receipt card in violation of 18 U.S.C. § 1426(b), was sentenced to two years' imprisonment, and was fined $1500.00. The fine imposed was a committed fine.

On this appeal the defendant urges that the evidence was insufficient to support the conviction. We find it sufficient.

■■■ Defendant urges that her fifth amendment rights were violated when the United States Attorney argued to the jury that certain evidence was uncontradicted. The prosecutor may not comment on the defendant's failure to take the witness stand (*Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967)), but, except under unusual circumstances, a prosecutor may argue that certain evidence is uncontradicted. *United States v. Noah*, 475 F.2d 688 (9th Cir. 1973).[1] Here as in *Noah* the disputed comments were directed to the lack of contradictory evidence and contained no explicit reference to the failure of the defendant to testify. The court did instruct the jury that it might not draw any inference of guilt from defendant's failure to testify. Under these circumstances we find no error.

---

* The Honorable Russell E. Smith, United States District Judge for the District of Montana, sitting by designation.

1. In *United States v. Noah*, the court said at 695–96:
   " '[W]here the prosecutor confines himself to arguing the strength of his case by stressing the credibility and lack of contradiction of his witnesses, we will not be astute to find in this a veiled comment on the defendant's failure to testify even if in practical fact, although not in theory, no one else could controvert them.' " (Citing cases.)

■■■ Defendant contends that she is indigent and that the imposition of a committed fine constitutes a denial of equal protection, cruel and unusual punishment, and involuntary servitude. If, under the sentence imposed, the defendant, because of her financial inability to pay a fine, will be imprisoned longer than someone who had the ability to pay the fine, then the sentence is invalid (*Tate v. Short*, 401 U.S. 395, 91 S.Ct. 668, 28 L.Ed.2d 130 (1971); *Williams v. Illinois*, 399 U.S. 235, 90 S.Ct. 2018, 26 L.Ed.2d 586 (1970)), and this is true whether the result of longer imprisonment is brought about by the operation of 18 U.S.C. § 3569[2] or by the fact that the nonpayment of a committed fine would adversely affect the defendant's parole status. In light of *Tate v. Short, supra*, and *Williams v. Illinois, supra*, 18 U.S.C. § 3569, to the extent that it would confine a defendant for 30 days beyond the normal release date for nonpayment of the fine, is unconstitutional. If, by reason of administrative regulation, parole would be denied or delayed because of nonpayment of a committed fine, then such administrative regulation would be invalid.

The Bureau of Prisons has formally recognized the unconstitutionality of 18 U.S.C. § 3569.[3] 28 C.F.R. § 2.32 provides that indigents who have assets in excess of the amount reasonably necessary for the support of the indigent and his family shall be released upon the payment of that excess. By a joint policy statement[4] the Bureau of Prisons and the Board of Parole have provided a procedure whereby, at a time prior to the date upon which a prisoner is being

---

2. Under 18 U.S.C. § 3569 an indigent unable to pay a fine may serve his release from a committed fine only after he has served 30 days solely for the nonpayment of the fine.

3. Policy Statement 2101.2A, June 25, 1971.

4. Policy Statement 7500.44/40100.20, March 19, 1973.

considered for parole, the indigent may make his indigent status known. If he is then in fact indigent, he is released at the time the parole is granted.

■ The defendant here will not be held for a period beyond her normal release date if the regulations and policies governing the Board of Parole and Bureau of Prisons are followed. Any prisoner may be held unlawfully beyond the time when as a matter of law he is entitled to be released, but the possibility of a future illegal action on the part of prison authorities does not make a sentence illegal.

HUFSTEDLER, Circuit Judge, concurring specially (Joined by Judge Ely):

Although I concur with Judge Smith's Opinion, I concur in that part of the Opinion dealing with committed fines solely under the compulsion of *United States v. Dixon* (9th Cir. 1976) 538 F.2d 812.

I believe that *Dixon* is wrong in denying standing to attack the constitutionality of a committed fine imposed on an indigent defendant until he or she has begun or is about to begin service of imprisonment for nonpayment of a committed fine. On the merits, I would hold that the imposition of a committed fine on Mrs. Castillo, an indigent,[1] is constitutionally impermissible as a denial of equal protection.

No federal statute expressly authorizes committed fines. The only relevant statutes merely assume the power to impose such a fine. (18 U.S.C. §§ 3565, 3569.) The practice of committing to enforce fines, however, has an ancient lineage in English law going back to the Norman kings. (Note, "Fines, Imprisonment and the Poor," 57 Calif.L.Rev. 778, 784–86 (1967).) In this country it existed at common law (*cf. Ex parte Garrison* (S.D.Cal.1924) 297 F. 509) and has been confirmed by statute in virtually all the states. (*See Williams v. Illinois*

(1970) 399 U.S. 235, 246–59, 90 S.Ct. 2018, 26 L.Ed.2d 586, S. Rubin, The Laws of Criminal Correction, 283 & n. 142 (2d ed. 1973).) Federal courts adopted local practice. (*Ex parte Barclay* (D.Me.1907) 153 F. 669.) But the foundation in pre-existing law does not appear to be essential; at least one court placed the power to confine for nonpayment among the "inherent" powers of a criminal court, "otherwise the court would be impotent to enforce" fines. (*Haddox v. Richardson* (4th Cir. 1909) 168 F. 635, 639.)

In federal courts the decision to impose a committed fine rests in the discretion of the trial judge. (*Hill v. U. S. ex rel Wampler* (1936) 298 U.S. 460, 56 S.Ct. 760, 80 L.Ed. 1283; *Ex parte Jackson* (1877) 96 U.S. 727, 24 L.Ed. 877; *U. S. v. Callahan* (9th Cir. 1967) 371 F.2d 658.) Although the decision to sentence to a committed fine floats free of any statutory mooring, it is not completely unbound. The only basis recognized for this sanction is enforcement. (*See, e. g., Williams v. Illinois, supra,* 399 U.S. at 240, 90 S.Ct. 2018; *Wildeblood v. U. S.* (1960) 109 U.S.App.D.C. 163, 284 F.2d 592; *U. S. v. Ridgewood Garment Co.* (E.D.N.Y.1942) 44 F.Supp. 435.) Thus, it is improper to sentence to a fixed period upon default as a punitive measure; rather, the defendant must be released upon payment. (*Chapman v. U. S.* (5th Cir. 1926) 10 F.2d 124; *U. S. v. Wagner* (9th Cir. 1924) 3 F.2d 864; *but see* S. Rubin, *supra,* at 283–84.) This sentence must further the enforcement process or it drifts away from its purpose. Here, in particular, the term of imprisonment (2 years) and fine ($1,500) were both substantially less than the statutory maximum under 18 U.S.C. § 1426, 5 years and $5,000. Since the sentence could have been much greater, the district court did not have punishment in mind when it assigned the committed fine.

When it imposed the fine, the district court made no prediction that Castillo would be able to pay it upon her release.

---

1. The Government does not contest Castillo's indigency. The district judge had appointed trial counsel, had ordered that she could appeal *in forma pauperis,* and had appointed appellate counsel. Castillo's husband had been sentenced to 12 years in prison on related charges. They have five children.

Were there some reasons to expect her to acquire $1,500, above and beyond her needs and those of her five children, the sentence might be expected to fulfill its enforcement role. In *Fuller v. Oregon* (1974) 417 U.S. 40, 94 S.Ct. 2116, 40 L.Ed.2d 642, the Supreme Court upheld a statute recouping from former indigents the costs of assigned counsel. An important feature of the statute was a determination by the trial judge at the time of sentencing that the defendant would be able to make subsequent payments. Here, where Castillo is presently indigent, her husband is in prison, and she has no prospects of significantly changing her status, a committed fine is most unlikely to play its only permissible role. Of course, keeping such a person in prison is fiscally counter-productive for the Government.

Congress, over a hundred years ago, recognized the futility of trying to extract a fine from an indigent when it passed Rev. Stat. § 1042. Section 1042's successor, 18 U.S.C. § 3569, permits a person held 30 days, "solely for nonpayment of . . . [a] fine" to declare indigency and be released from custody. The procedure does not discharge the underlying fine and the Government can still execute against a person's property. (18 U.S.C. § 3565.) Most states have set an upper limit on time served, or allowed the convict to work off the fine at a specific amount per day. (*See* American Bar Association, Standards Relating to Sentencing Alternatives and Procedures 286, 287 (Tent. Draft 1967).) In England, since 1914, and more recently in various states in this country, installment payment has been permitted. (Mannheim, "Comparative Sentencing Practice," 23 L. & Contemp. Problems 557, 563 (1957); Note, "Fines and Fining," 101 U.Pa.L.Rev. 1013, 1023 (1953).)

These palliatives do not reach the core issue: indigents may be held in jail while non-indigents, otherwise similarly situated, are released. In 1970 and 1971, the Supreme Court made it clear that if a defendant, because of his financial inability to pay a fine, will be imprisoned longer than someone who has the ability to pay the fine, then the sentence is invalid. (*Tate v. Short* (1971) 401 U.S. 395, 91 S.Ct. 668, 28 L.Ed.2d 130; *Williams v. Illinois, supra.*) This is true whether the longer imprisonment results from the imposition of the sentence or by the fact that the nonpayment of a committed fine would adversely affect the defendant's parole status.[2]

*Tate* and *Williams* leave courts ample artillery to collect defaulted fines. Section 3565 authorizes execution against the defaulter's property. (*See U. S. v. Baird* (2d Cir. 1957) 241 F.2d 170 (After pauper's oath execution exclusive remedy; contempt not allowed.).) Moreover, 18 U.S.C. § 3651 permits the court to condition probation upon the condition of a fine, either in lump sum or in installments. Probation can be revoked for willful nonpayment of the fine.

A committed fine as applied to one presently indigent and lacking any realistic prospects of acquiring the means to pay can play no role in enforcing payment; the Government has adequate tools to move against the defendant's property; and if the indigent was imprisoned, the sanction would be illegal.

---

2. The Bureau of Prisons has formally recognized the unconstitutionality of holding indigents beyond the term of the sentence. (28 C.F.R § 2.32.) But this regulation, which is subject to withdrawal, cannot legitimate the underlying sentence.