**UNITED STATES of America,**

v.

**Larry LEVENSON, Harry Gordon a/k/a "Hy Gordon", Frank Pernice, and Alan Feinberg, Defendants.**

**No. S 81 Cr. 56 (ELP).**

United States District Court, S. D. New York.

Oct. 27, 1981.

Peter Sudler, Sp. Asst. U.S. Atty., Robert Jupiter, Asst. U.S. Atty., S.D.N.Y., New York City, for the U.S.

Barry Shulman, New York City, and Henry Shulman, Brooklyn, N.Y., for defendant Feinberg.

Robert Koppelman, New York City, for defendant Gordon.

David Breitbart, New York City, for defendant Levenson.

Ronald Fischetti and Anne Feigus, New York City, for defendant Pernice.

## MEMORANDUM AND ORDER

PALMIERI, District Judge.

Larry Levenson, Harry Gordon and Frank Pernice were found guilty on June 4, 1981 after a jury trial of evading the federal tax laws and conspiring to evade them in violation of 26 U.S.C. § 7201 and 18 U.S.C. §§ 2, 371.[1]

These defendants participated in a sophisticated and well orchestrated skimming operation for personal financial gain. The evidence adduced at the trial supported the conclusion that from September 30, 1977 through September 30, 1980 they skimmed over 2.3 million dollars from the gross receipts of their enterprise, Plato's Retreat, an entertainment facility favoring sexual encounters among its paying customers. As a result of this tax fraud the government was cheated out of very substantial taxes due and owing to it, and conservatively estimated to be more than $1,562,106.38. These monies were divided among them on a weekly cash basis. Pernice received 10 percent of the club's gross income, while Levenson and Gordon divided the net proceeds equally. Additionally, these individuals filed fraudulent personal tax returns in order to evade income tax on the skimmed money. The government investigation of the defendants' activities was prolonged and costly. The agents of the Internal Revenue Service (IRS) spent almost a year to conduct an audit of Plato's Retreat because of the systematic tactics of hindrance and obstruction engaged in by the defendant Levenson and his accountant, the defendant Feinberg.

The defendants Levenson, Gordon and Pernice were found guilty of charges of corporate and personal tax evasion. The defendant Feinberg was found guilty only

---

1. A fourth defendant, Alan Feinberg, a public accountant employed by Plato's Retreat, was convicted on June 5, 1981 of one substantive count and will be referred to separately.

on count 2 charging him, as well as the remaining three defendants, with filing a false and fraudulent income tax return setting forth the total taxable income of Plato's Retreat for the fiscal year ending September 30, 1978 to be $377.00 and the total tax due to be zero. The defendants Levenson and Gordon were also found guilty of charges that they had filed false employer's quarterly tax returns understating the amount of gross wages paid to their employees.[2]

The defendants' convictions have not interrupted the operation of Plato's Retreat. It continues to operate from larger and more elaborate premises. For the surrender of its lease at the former site of operations it received 1 million dollars. Levenson, Gordon and Pernice are the sole owners of the enterprise. Levenson and Gordon both testified at a hearing before the court on October 22, 1981 that it currently produces about $100,000 of gross income per month.[3]

The defendants were sentenced to pay committed fines totaling $160,000 as well as the costs of prosecution. The costs of prosecution were subsequently determined to be $19,597.65. The defendants have not paid any part of their fines or the costs of prosecution. The matter is now before the court on a motion by the government to compel the defendants to make full and immediate payment of their fines or to stand committed if they fail to do so. The court held hearings on October 7, 22 and 23, 1981. The defendants were called to testify by the government and were questioned with respect to their financial status and ability to pay the fines and costs.

Before sentence the defendants filed financial statements with the Probation Department of this court at its direction indicating that they were debt ridden and possessed meager assets. In contrast to their professed impecuniosity, they have been represented throughout these proceedings by experienced privately retained counsel. The freedom of the defendants Levenson, Gordon and Pernice on bail pending appeal has been conditioned upon personal recognizance bonds of $150,000.00 each secured by a $100,000 indemnity bond which each defendant has posted. Gordon and Pernice have other business interests, the exact nature of which has not been fully revealed. Their testimony at the hearings before this court made it clear, however, that they have substantial investments with friends and relatives and that they make scant use of bank accounts and normal business records. Pernice admitted from the witness stand at the hearing of October 23, 1981 that he was a 60 percent owner of a catering business in which his brothers are co-owners, and which presently has a gross income of 1.6 million dollars per year. Gordon maintains a son at an expensive Ivy League college and has already paid for the higher education of a daughter who possesses a master's degree. Levenson is the owner of an eight room, two story brick home in which he lives containing four bedrooms and a small apartment in the basement area. According to the presentence report, the home was fully carpeted and nicely furnished. It undoubtedly has a sizeable equity value. Gordon and Levenson testified they both have the use of expensive automobiles (respectively, a Jaguar and a Lincoln Continental) leased and paid for by Plato's Retreat.

The defendant Feinberg appears to be in a separate category. Although he actively participated in the tax fraud and obstructed the IRS audit, there was no evidence that he participated in the massive skimming of the gross receipts of Plato's Retreat. His counsel conceded that he continues to practice as a public accountant but added that

**2.** The sentences imposed on each defendant are set forth as Appendix A attached hereto.

**3.** This information was first conveyed to the court in answer to a question during the hearing of October 7, 1981 on the government's motion. The court had suggested that it might consider the feasibility of a receivership to secure the payment of the fines. This suggestion was later withdrawn because it appeared to the court that it would be unseemly for its representative to be connected with the type of business conducted by Plato's Retreat.

Feinberg's unfavorable financial position would not permit him to pay any part of the fines or court costs. His release on bail pending appeal from his conviction was conditioned on a $25,000 surety bond which he has posted. Although he continues to practice as a public accountant, his testimony at the hearing of October 22, 1981 would not support a conclusion that he has a present ability to pay his committed fine of $10,-000.00.

From all of the above, the conclusion is inescapable that the defendants Levenson, Gordon and Pernice are persons of substantial financial means. They have successfully laundered a very large amount of money from the proceeds of Plato's Retreat, far in excess of the committed fines and prosecution costs in question, and it is clear that they have no intention of making full or immediate payment to the government.[4] At the first hearing of the government's motions they offered to take pauper's oaths, while at the same time renewing an offer, previously rejected by the government, to pay at the rate of $1,000 each per month. Such a schedule of payments, if adhered to, would require several years before the fines could be paid. At the subsequent hearings the defendants pressed their offer to pay by monthly installments.

■ The court is aware that imprisonment of an indigent person solely for nonpayment of a fine would violate rights of due process and equal protection. *Tate v. Short*, 401 U.S. 395, 91 S.Ct. 668, 28 L.Ed.2d 130 (1971); *Morris v. Schoonfield*, 399 U.S. 508, 90 S.Ct. 2232, 26 L.Ed.2d 773 (1970); *Williams v. Illinois*, 399 U.S. 235, 90 S.Ct. 2018, 26 L.Ed.2d 586 (1970). *See also United States v. Glazer*, 532 F.2d 224 (2d Cir.), *cert. denied*, 429 U.S. 844, 97 S.Ct. 123, 50 L.Ed.2d 115 (1976). But this cannot mean that a person who has the means to pay a fine but refuses or neglects to do so is immune from imprisonment for nonpayment of committed fines.

■ To borrow from the language of the Ninth Circuit in *United States v. Miller*, 588 F.2d 1256, 1264 (9th Cir. 1978), *cert. denied*, 440 U.S. 947, 99 S.Ct. 1426, 59 L.Ed.2d 636 (1979):

Although there is no statutory authority expressly authorizing committed fines, the power has long existed at common law and is "assumed" in the federal system. *United States v. Estrada de Castillo*, 549 F.2d 583, 585 (9 Cir. 1976) (J. Hufstedler, concurring). *See* 18 U.S.C. §§ 3565, 3569. The decision to impose a committed fine rests in the discretion of the trial judge. *United States v. Estrada de Castillo, supra*, 549 F.2d at 585. Presently it is well established that an indigent prisoner cannot be subjected to imprisonment for failure to pay a fine for a longer period of time than someone who has ability to pay the fine. *Tate v. Short*, 401 U.S. 395, 91 S.Ct. 668, 28 L.Ed.2d 130 (1971); *Williams v. Illinois*, 399 U.S. 235, 90 S.Ct. 2018, 26 L.Ed.2d 586 (1970); *United States v. Estrada de Castillo, supra*, 549 F.2d at 583. However, the Supreme Court when establishing that rule took special care to explain:

"We emphasize that our holding today does not suggest any constitutional infirmity in imprisonment of a defendant with the means to pay a fine who refuses or neglects to do so." *Tate v. Short, supra*, 401 U.S. at 400, 91 S.Ct. at 672.

The government should not be put to the inconvenience and expense of attempting to ferret out the assets of nonindigent persons

4. In the limited time available, the court has gathered enough information to permit it to conclude that present procedures regarding the collection of fines are grossly inadequate and that in the absence of identifiable assets subject to attachment the government does not generally pursue any effective collection procedures. The filing of an oath of indigence at the end of the jail term, *see* 18 U.S.C. § 3569; The Bureau of Prisons Policy Statement, Fines and Costs, No. 5882.1 (n.s) (Oct. 4, 1977) (the predecessor policy statement, No. 2101.2A, was quoted in *United States v. Glazer, supra*, at 230–31 n.5), appears to have become a convenient method of nullifying committed fines on the part of those who have successfully laundered their ill-gotten gains. It is small wonder that the law-abiding community must tolerate the presence of a class of millionaire felons.

in seeking to collect committed fines. The administrative burden and the expenditure of public funds incident thereto could be substantial and might well be undertaken in vain. The public interest requires a Draconian remedy once it is established that the nonpayment is caused, not by indigence, but by unwillingness to pay. Of paramount importance in this case is that with respect to count 1 of the indictment on which the jury convicted Levenson, Gordon and Pernice, and with respect to the evidence relevant to that count, a jury finding can be inferred that the defendants skimmed 2.3 million dollars from the proceeds of Plato's Retreat.[5] This money has been successfully laundered. Their testimony at the hearings before this court at which each one professed to have no present ability to pay the fines is patently unbelievable.

In this case there can be no question of indigence. The nature and scope of the defendants' massive tax evasion as well as their offer to pay $1,000.00 each per month, make clear that there exists an ability to pay. They are not indigents. They are recalcitrants. They can make no claim to the deference accorded to those who are financially disadvantaged.

The defendants Levenson, Gordon and Pernice are directed to pay their committed fines forthwith, or to post a surety bond guaranteeing its payment on the filing of the mandate of the Court of Appeals in the event the convictions are affirmed. If such fines remain unpaid, or a surety bond is not posted, by 12 noon on October 30, 1981, they shall stand committed until such fines are paid.

A separate disposition will be made of the government's motion with respect to the defendant Feinberg.

It is so ordered.

### APPENDIX A

The sentences imposed on the defendants were as follows:

LARRY LEVENSON:

"FIVE (5) Years, on each of counts 1, 2, 3 and 4, all to run concurrently with each other. THREE (3) Years on each of counts 9 and 10 each to run concurrently with the other but to run consecutively to counts 1, 2, 3 and 4. THREE (3) Years on count 11. Execution of sentence on count 11 is suspended, and defendant is placed on supervised probation for a period of FIVE (5) Years, following his release from confinement, subject to the standing Probation Order of the Court. Bail continued pending appeal.

FINED: $10,000 on each of counts 1, 2, 3 and 4.

FINED: $5,000 on each of counts 9, 10 and 11.

TOTAL FINES: $55,000.

ALL FINES are committed FINES. DEFENDANT IS TAXED with the costs of prosecution pursuant to Title 26 U.S.Code Section 7201 and Title 28 U.S.Code Section 1918(b).

As a special condition of probation the defendant shall provide full financial disclosure on a continuing basis to the Probation Department."

Defendant was convicted as charged of the offenses of: Income Tax Evasion and Conspiracy; Title 26 U.S.Code Sections 7201 and 7206(1); and Title 18 U.S.Code Sections 2 and 371.

HARRY GORDON:

"FIVE (5) Years, on each of counts 1, 2, 5 and 6, all to run concurrently with each other. THREE (3) Years, on each of counts 9 and 10, to run concurrently with each other but to run consecutively to counts 1, 2, 5 and 6. THREE (3) Years on count 11. Execution of sentence on count 11 is suspended, and defendant is placed on supervised probation for a period of FIVE (5) Years, following his release from confinement, subject to the standing Probation Order of the Court. Bail continued pending appeal.

FINED: $10,000 on each of counts 1, 2, 5 and 6.

---

**5.** Count 1 is reproduced as Appendix B attached hereto. Of special pertinence are the allegations of paragraphs 11 and 12(a), (b).

FINED: $5,000 on each of counts 9, 10 and 11.

TOTAL FINES: $55,000.

ALL FINES are committed FINES. DEFENDANT IS TAXED with the costs of prosecution pursuant to Title 26 U.S.Code Section 7201 and Title 28 U.S.Code Section 1918(b).

As a special condition of probation the defendant shall provide full financial disclosure on a continuing basis to the Probation Department."

Defendant was convicted as charged of the offenses of: Income Tax Evasion and Conspiracy; Title 26 U.S.Code Sections 7201 and 7206(1); and Title 18 U.S.Code Sections 2 and 371.

FRANK PERNICE:

"FIVE (5) Years, on each of counts 1 and 2, to run concurrently with each other. THREE (3) Years on count 7, to run consecutively to counts 1 and 2. FIVE (5) Years on count 8. Execution of sentence on count 8 is suspended, and defendant is placed on supervised probation for a period of FIVE (5) Years, following his release from confinement, subject to the standing Probation Order of the Court. Bail continued pending appeal. FINED: $10,000 on each of counts 1 and 2.

FINED: $10,000 on count 7.

FINED: $10,000 on count 8.

TOTAL FINES: $40,000.

ALL FINES are committed FINES. DEFENDANT IS TAXED with the costs of prosecution pursuant to Title 26 U.S.Code Section 7201 and Title 28 U.S.Code Section 1981(b).

As a special condition of probation the defendant shall provide full financial disclosure on a continuing basis to the Probation Department."

Defendant was convicted as charged of the offenses of: Income Tax Evasion and Conspiracy; Title 26 U.S.Code Section 7201, and Title 18 U.S.Code Sections 2 and 371.

ALAN FEINBERG:

"FOUR (4) Years, on count 2. Bail continued pending appeal.

FINED: $10,000 on count 2. Fine is a committed fine. Defendant is taxed with the costs of prosecution pursuant to Title 26, U.S.Code § 7201 and Title 28, U.S. Code § 1918(b)."

Defendant was convicted as charged of the offense of: Income Tax Evasion; Title 26, U.S.Code Section 7201, and Title 18, U.S. Code Section 2.

## APPENDIX B

Count 1 of the indictment reads as follows:

### INTRODUCTION

1. At all relevant times, Plato's Retreat, Inc., was a New York Corporation doing business as Plato's Retreat. The corporation's business operated on a fiscal year basis, the fiscal years ending September 30, 1978, September 30, 1979, and September 30, 1980. The corporation was required by law to file true and accurate federal income tax returns setting forth the gross receipts of the corporation and the tax due and owing on said receipts for said fiscal years, and to pay such tax.

2. At all relevant times LARRY LEVENSON, the defendant, was a disclosed owner of Plato's Retreat.

3. At all relevant times, HARRY GORDON, a/k/a "Hy Gordon" and FRANK PERNICE, the defendants, were undisclosed owners of Plato's Retreat.

4. At all relevant times, ALAN FEINBERG, the defendant, was the accountant and tax preparer for Plato's Retreat.

5. At all relevant times, Plato's Retreat, Inc., Oasis Cabana Spa, Inc., and Pergo Enterprises, Inc. were all located in the Ansonia Hotel, 230 West 74th Street, New York, New York.

6. Pergo Enterprises, Inc. was formed by FRANK PERNICE and HARRY GORDON, a/k/a "Hy Gordon" in order to lease space from the Ansonia Hotel with the purpose of concealing from the Ansonia Hotel the true nature of the business that was to be conducted on the leased premises.

7. Oasis Cabana Spa, Inc. was formed by HARRY GORDON, a/k/a "Hy Gordon" and

LARRY LEVENSON in order to further conceal from the owners of the Ansonia Hotal [sic] the true nature of the business that was to be conducted on the leased premises. Oasis Cabana Spa, Inc. leased space from Pergo Enterprises, Inc. and then sub-leased this space to Plato's Retreat, Inc. Therefore, for all practical purposes the Ansonia Hotel leased space that was to become known to the public as Plato's Retreat to LARRY LEVENSON, HARRY GORDON, a/k/a "Hy Gordon" and FRANK PERNICE.

## THE CONSPIRACY

8. From on or about September 22, 1977, up to and including the filing of this Indictment in the Southern District of New York and elsewhere, LARRY LEVENSON, HARRY GORDON, a/k/a "Hy Gordon," FRANK PERNICE and ALAN FEINBERG, the defendants, unlawfully, wilfully and knowingly did combine, conspire, confederate and agree together and with each other and with others to the Grand Jury known and unknown to defraud the United States by impeding, impairing, obstructing and defeating the lawful functions of the Internal Revenue Service of the United States Department of the Treasury in the ascertainment, computation, assessment and collection of revenue, to wit: the corporate income taxes of Plato's Retreat, Inc. in violation of Title 26, United States Code, Sections 7201, 7206(1) and 7206(2).

## THE OBJECTS OF THE CONSPIRACY

9. It was a part of said conspiracy that LARRY LEVENSON, HARRY GORDON, a/k/a "Hy Gordon," FRANK PERNICE and ALAN FEINBERG, the defendants, unlawfully, wilfully and knowingly would evade and attempt to evade and defeat a large part of the corporate income tax due and owing by Plato's Retreat, Inc., for the fiscal years ending September 30, 1978, September 30, 1979 and September 30, 1980 by filing and causing to be filed with the Internal Revenue Service, false and fraudulent corporate income tax returns.

10. It was further a part of said conspiracy that LARRY LEVENSON, HARRY GORDON, a/k/a "Hy Gordon," FRANK PERNICE and ALAN FEINBERG, the defendants, unlawfully, wilfully and knowingly would aid and assist in, and procure, counsel and advise the preparation and presentation of false and fraudulent corporate income tax returns for Plato's Retreat, Inc. for the fiscal years ending September 30, 1978, September 30, 1979 and September 30, 1980.

## THE MEANS BY WHICH THE CONSPIRACY WAS CARRIED OUT

11. Among the means whereby LARRY LEVENSON, HARRY GORDON, a/k/a "Hy Gordon," FRANK PERNICE and ALAN FEINBERG, the defendants, would and did accomplish the objects set forth in paragraphs 9 and 10 above, were the following;

(a) From September 23, 1977 up to September 23, 1980, LARRY LEVENSON, HARRY GORDON, a/k/a "Hy Gordon," and FRANK PERNICE would and did systematically skim, divert, extract and appropriate unto themselves corporate cash receipts of Plato's Retreat in excess of two million three hundred thousand dollars in order that these monies would not be reported on the corporate income tax returns of Plato's Retreat, Inc. for the fiscal years ending September 30, 1978, September 30, 1979 and September 30, 1980. The corporate income tax returns for the fiscal years ending September 30, 1978 and September 30, 1979 were delinquently filed with the Internal Revenue Service after the commencement of an audit of Plato's Retreat, Inc. and were both prepared by ALAN FEINBERG, the defendant.

(b) Income of Plato's Retreat, Inc. would be skimmed, diverted, extracted and appropriated in the following manner: Plato's Retreat, Inc. was almost entirely a cash business. Patrons of Plato's Retreat would pay a cash entrance fee at the door, ranging form $10 to $50. Cash was also received inside Plato's Retreat on such items as vending machine sales, coat checks, bou-

tique sales and the leasing of its premises for private parties. The cashier at the entrance of Plato's Retreat would admit couples to the premises and collect the appropriate cash fee. A door register sheet was maintained each evening by the cashiers upon which the first name of each person entering Plato's Retreat would be recorded along with the cash entrance fee that was collected for their admission. These door register sheets, therefore, would reflect the true gross receipts of Plato's Retreat for each evening of operation from admissions at the door.

(c) Daily tally sheets were maintained which reflected true total cash receipts for Plato's Retreat for each evening of operation. These daily tally sheets summarized the total cash received at the door for admission to the club as reflected on the door registers as well as cash received from coat checks and boutique sales. Once a week HARRY GORDON, a/k/a "Hy Gordon" would determine, utilizing the door register sheets and the daily tally sheets, the amount of cash that would be skimmed from the gross cash receipts of Plato's Retreat and diverted to the personal use of LARRY LEVENSON, HARRY GORDON, a/k/a "Hy Gordon," and FRANK PERNICE. This skimmed cash was to be concealed, and in fact was concealed, from the Internal Revenue Service.

(d) During the first two years of its operation Plato's Retreat, Inc. never filed an income tax return and accordingly the Internal Revenue Service conducted an audit for the purpose of ascertaining the true amount of income tax owed by Plato's Retreat, Inc. to the United States. During the course of this audit Internal Revenue Agents were inadvertently shown certain true and accurate records of income received by Plato's Retreat. When this fact became known to HARRY GORDON, a/k/a "Hy Gordon," the defendant, he removed these records from the premises of Plato's Retreat in order to conceal them from the Internal Revenue Agents. Thereafter, LARRY LEVENSON and ALAN FEINBERG, the defendants, engaged in a cover-up by thereafter falsely stating to the Internal Revenue Agents (1) the amount of income received by Plato's Retreat, Inc. and (2) that the records of income inadvertently given to the Internal Revenue Agents had been stolen by an employee, as further enumerated in the overt acts listed below.

OVERT ACTS

12. In furtherance of said conspiracy, and to effect the objects thereof, the following overt acts were committed in the Southern District of New York and elsewhere:

(a) From on or about September 23, 1977 up to and including August 31, 1980, on virtually a daily basis, LARRY LEVENSON, HARRY GORDON, a/k/a "Hy Gordon," and FRANK PERNICE, the defendants, skimmed, diverted, extracted and appropriated unto themselves a substantial portion of the daily gross receipts of Plato's Retreat, Inc.

(b) From on or about September 23, 1977 up to and including August 31, 1980, on virtually a weekly basis, HARRY GORDON, a/k/a "Hy Gordon," the defendant, divided the skimmed gross receipts of Plato's Retreat, Inc. referred to in overt act (a) above between himself, LARRY LEVENSON and FRANK PERNICE.

(c) On or about November 27, 1979 and on other occasions, during an Internal Revenue audit, ALAN FEINBERG and LARRY LEVENSON, the defendants, had several conversations in which they falsely stated that Plato's Retreat Inc. was solely owned by LARRY LEVENSON.

(d) On or about October 30, 1979, during an Internal Revenue audit, ALAN FEINBERG and LARRY LEVENSON, the defendants, had several conversations in which they falsely stated that Plato's Retreat, Inc. held tax-exempt organization status and thus was not required to file federal income tax returns.

(e) On or about February 20, 1980, during an Internal Revenue audit, ALAN FEINBERG and LARRY LEVENSON, the defendants, falsely stated that Plato's Re-

treat, Inc. received no income from the leasing of Plato's Retreat for private parties.

(f) On or about February 26, 1980, during an Internal Revenue audit, ALAN FEINBERG and LARRY LEVENSON, the defendants, falsely stated that Plato's Retreat, Inc. derived no income from the sale of yearly or lifetime memberships.

(g) On or about November 27, 1979, and on other occasions during an Internal Revenue audit, ALAN FEINBERG and LARRY LEVENSON, the defendants, falsely stated that the door register sheets of Plato's Retreat did not contain on them the amounts of cash which were paid by customers for admission to the club.

(h) On or about November 27, 1979, during an Internal Revenue audit, ALAN FEINBERG and LARRY LEVENSON, the defendants, falsely stated that Plato's Retreat, Inc. received no income from the sale of items from the boutique.

(i) On or about November 27, 1979, during an Internal Revenue audit, ALAN FEINBERG and LARRY LEVENSON, the defendants, falsely understated the number of couples who paid admission to Plato's Retreat.

(j) In or about May of 1979 FRANK PERNICE, the defendant instructed HARRY GORDON, a/k/a "Hy Gordon," the defendant, to remove financial records of Plato's Retreat from their repository at 205 West End Avenue, New York, New York.

(k) On or about May 30, 1980, during an Internal Revenue audit, HARRY GORDON, a/k/a "Hy Gordon," removed certain true and accurate records of income and expenses of Plato's Retreat, Inc. from the business premises of that corporation.

(l) On or about July 3, 1980, during an Internal Revenue audit, LARRY LEVENSON, the defendant, in the presence of ALAN FEINBERG, the defendant, falsely stated that the records of income and expenses of Plato's Retreat, Inc., referred to in overt act (k) above, had been stolen from the premises of Plato's Retreat by an employee.

(m) On or about September 23, 1980, while under oath before a grand jury sitting in the Southern District of New York, ALAN FEINBERG, the defendant, falsely stated that certain records of Plato's Retreat, Inc. had been stolen by an employee of Plato's Retreat.

(n) On or about July 3, 1980, during an Internal Revenue audit, LARRY LEVENSON, the defendant, falsely stated that no employees of Plato's Retreat were paid in cash.

(o) On or about November 27, 1979, LARRY LEVENSON, the defendant, subscribed a delinquent corporate income tax return on behalf of Plato's Retreat, Inc. for the fiscal year ending September 30, 1978.

(p) On or about June 2, 1980, LARRY LEVENSON, the defendant, subscribed a delinquent corporate income tax return on behalf of Plato's Retreat, Inc. which substantially understated the gross receipts of Plato's Retreat, Inc. for the fiscal year ending September 30, 1979.

(Title 18, United States Code, Section 371).